EDWARD BOYD, Respondent, v. WILLIAM H. GRAHAM ET AL., Appellants.

### March 12, 1878.

1. To support a recovery on the ground of negligence in failing to comply with an alleged business custom, it must appear that the custom was general and well established, so as to raise a presumption that defendant knew it, or that he had actual knowledge of it.

2. One in the regular discharge of a duty, using proper care, and having taken ordinary precautions to prevent an accident, is not liable for damage resulting from the accidental breaking of a tool being used by him.

3. It is negligence to leave glass exposed in the lower story of a building in course of construction, in a position where workmen are carrying and using materials and tools over the unfloored rafters above.

APPEAL from St. Louis Circuit Court.

*Reversed, and judgment.*

J. M. & C. H. KRUM, for appellants: Admissibility and competence of evidence of custom. — *Cotton Press Co.* v. *Stanard*, 44 Mo. 83; *Hill* v. *Railroad Co.*, 55 Me. 438; *Colton* v. *Colver*, 1 Watts, 360; *Miller* v. *Pendleton*, 8 Gray, 547; *Walsh* v. *Transportation Co.*, 52 Mo. 438. Negligence. — *Smith* v. *Railroad Co.*, 37 Mo. 292; *Maher* v. *Railroad Co.*, 64 Mo. 275; *Holman* v. *Railroad Co.*, 62 Mo. 564.

D'ARCY & NAGEL, for respondent: Where the objection that the pleadings do not raise an issue calling for testimony offered is not made below, the objection cannot be made in the appellate court. — *Brown* v. *Railroad Co.*, 50 Mo. 466. Negligence. — Shear. & Redf. on Neg. 16; *Ware* v. *Gray*, 11 Pick. 106; *Carpur* v. *Railroad Co.*, 5 Q. B. 746; *Feital* v. *Railroad Co.*, 109 Mass. 398.

Bakewell, J., delivered the opinion of the court.

This is an action for damages for negligently destroying certain glass. The answer is a general denial. There was a verdict and judgment for plaintiff; and defendants appeal.

There is no contradiction in the evidence except as to one point, which will be mentioned. The testimony showed that in September, 1875, plaintiff was the owner of glass to the value of $800, which was then, and for four months previously had been, lying in a room in the building called the Chamber of Commerce, then in process of erection, placed there for the purpose of being used in the building. This glass was not in boxes, or otherwise protected. Defendants were doing the plumbing-work of the building, under a contract, and at the date of the accident were directed by the architect, in accordance with their contract, to cut off a flange of an iron girder about one inch and a half thick, to give passage to a pipe. Defendants employed a competent and skilful workman to do this job, and directed him to nail boards under the girder, in order that no injury might accrue to persons or property by any thing which might fall. The ordinary and proper way to do the work was to cut the iron half-way through with a small chisel and hammer, and then to break off the flange with a blow from a sledge-hammer. The workman was proceeding with the job, and was about to nail the boards as directed by defendants, when the superintendent of the building observed him, and directed him not to nail up boards, but to nail a gunny-sack under his work. This superintendent was in the employ of the owners of the building; his duty was to see that the contractors did their work properly, and he was authorized to suggest to workmen better ways of doing their work whenever it seemed to him necessary. He had no authority to control defendants' servant as to his way of doing the work, and he did not undertake to do so. At the time this superintendent gave the directions about the gunny-bag, the workman was using the small hammer and chisel; the

superintendent thought he would continue to do so, and suggested the gunny-bag, because he considered it better calculated to prevent an injury than the boards would be. The owners of the building had previously directed this superintendent to lay boards upon the floor above, to prevent injury to the glass. The workman was not told by the defendants that the glass was under him. When he hit the flange with the sledge-hammer to break it off, he struck an ordinary blow; the hammer, which was apparently sound, broke off at the head, and the head of the hammer broke through the bagging and smashed the glass beneath, injuring it to the amount of $235.

A witness testified, against the objection of defendants, that it is customary in St. Louis for one contractor to notify others who had material in the same building that he was about to begin work in the building. One of the defendants testified that there was no such custom. This was the only contradiction in the testimony. It further appeared that plaintiff had no notice in accordance with the alleged custom. There were many workmen employed on the floor above the glass, and they were at work with various tools and all kinds of materials.

At the close of plaintiff's case, defendants asked an instruction in the nature of a demurrer to evidence, which was refused. The case was given to the jury upon instructions which we need not set out.

We think that, upon this evidence, the plaintiff was not entitled to recover. So far as the alleged custom of notifying other contractors before beginning work is concerned, the recovery cannot be supported upon the ground of negligence in not complying with it, because it does not appear to have had the force of law, that it was general and well established, so that defendants must be presumed to have had knowledge of it, nor that they did have any knowledge of it at the time that they entered into their contract and performed their work. The testimony is that they knew nothing of any such custom.

The defendants were not insurers of plaintiff's glass. He left it exposed, and defendants' servant used what was regarded by experienced men as proper precaution. The damage was a pure accident, caused by the breaking of a hammer, which the workman could not foresee, and against which he was not bound to provide. There is no pretence that the bagging stretched under his work would not have been sufficient to stop any thing which would have fallen into it in the ordinary course of his employment. The uncontradicted testimony is that he used every proper precaution against the falling of any object to be detached by him in the course of his work, and more could not be required under the circumstances. In an unfinished building, with many workmen employed at different heights, accidents from the falling of materials and tools would seem to be inevitable. Surely one is not to be more careful of glass than of the lives of those who may happen to pass beneath him. The negligence which was the direct cause of the loss in the present case was that of those who left glass unprotected in an unfinished building, where workmen were liable at any moment to be engaged overhead. Few prudent men would contract for building-work if they were to be held to insure against the accidents inseparable from the business. It is negligence to leave glass exposed in a building of which the floors are not laid, and in which men are passing to and fro, and using tools in the upper stories. The well-settled principle of law is, that no one can be held responsible in damages for consequences which he could not prevent by prudence and care. If, by great prudence and circumspection, he might have prevented the accident, he may be liable. Or if the one occasioning the injury is not in the regular discharge of his duty, but is doing a purely voluntary act, as uncocking a gun, or shooting at a mark, he may be answerable, perhaps, for a pure accident, because the act is one he is not required to do. But if a soldier, during exercise, hurt his companion, he is not liable; nor is one liable when his horse takes fright and becomes unmanage-

able, and does mischief.   5 Car. & P. 410 ; 2 Bing. 213.
A lawful action may cause serious injury to another, but for
this there can be no redress where there was no negligence
or bad conduct.   I may burn the stubble on my field, on a
calm day, and am not liable if it spread by accident to my
neighbor's field.   8 Johns. 421 ; 8 Wis. 257.   Neither am
I bound to use every possible precaution ; otherwise, the
ordinary affairs of life could not be blamelessly carried on,
except under precautions which would render life a burden.
When called upon in the course of his ordinary duties to
use a sledge-hammer, one accustomed to the implement has
a right to suppose that it will sustain an ordinary blow, and,
if using it lawfully, is not bound to take precautions against
some possible, but unsuspected, hidden defect in the instru-
ment itself.   It is true that if my neighbor shows damage
resulting from an act of mine, which, with the exercise of
proper care and diligence, does not ordinarily produce dam-
age, he makes out a *prima facie* case ; but he cannot
recover if I show the use of proper care, or prove an extra-
ordinary accident which renders the ordinary precautions
useless.   2 Ind. 138 ; 15 Conn. 124 ; 7 Vern. 62.

The proof of due care and inevitable accident was clear
in the case at bar, and it was uncontradicted.   The same
may be said as to the proof of contributory negligence on
the part of the plaintiff.   Those who leave glass exposed in
the lower story of a building in course of completion, in a
position that workmen carrying and using tools are likely
at any time to be working upon or passing over the un-
floored rafters above it, are supposed to know and assume
the risks naturally incident to the situation ; and if they
neglect to take obvious precautions, the fault is their own.
They cannot devolve upon others the extra care of hazard-
ous property which properly falls to them.

If there were any evidence to sustain this verdict, it would
not be disturbed merely because, had we been the triers of
the fact, we should have found otherwise.   The question

before us is purely one of law. On the undisputed facts of the case as preserved in the record, we must pronounce, as a matter of law, that plaintiff is not entitled to recover.

The judgment is reversed, and judgment is entered here for defendants. All the judges concur.