## MRS. S. E. McMIENS, Appellant, v. UNITED RAILWAYS COMPANY OF ST. LOUIS.

### Division Two, April 26, 1918.

1. **NEGLIGENCE: Custom: Stopping Car.** A pedestrian who attempted to cross the track in front of an approaching street car, on the theory that it would stop before it reached the path which skirted the platform and along which she was hurrying for the purpose of boarding the car, must produce evidence that it was customary for the car to stop before projecting its front end into the path, in order to recover for the injuries received when it struck her; and to establish a custom that cars stopped before reaching the path it must be shown to have been general, uniform, certain and notorious, known to her or so general and universal that knowledge will be presumed.

2. ———: ———: ———: **Intention to Stop.** Even though it was customary for street cars, in stopping for passengers at a certain

platform, to stop before they reached a certain path crossing the track, along which path a pedestrian was hurrying in order to board an oncoming car and was struck, she cannot recover if there was no one on the platform and there is no evidence that the car was intending to stop at the point at all.

3. ———: Humanitarian Doctrine: Anticipation. There is no room for the humanitarian doctrine in a case, in which a pedestrian seeks to recover for injuries received as she was attempting to cross the track in front of an oncoming street car, if there was no reason to anticipate that she would get too close to the track.

Appeal from the St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Fauntleroy, Cullen & Hay* for appellant.

(1) It was error to give defendant's instruction numbered 2. (a) Plaintiff had a right to presume that the motorman would stop the car, as such cars were customarily stopped, and that he would not allow it to be run beyond the platform so as to endanger her. Scott v. Met. St. Ry. Co., 138 Mo. App. 201; Percell v. Railroad, 126 Mo. App. 44; Lawson v. Met. St. Ry. Co., 40 App. Div. 307; Frank v. Met. St. Ry. Co., 58 App. Div. 100; Zimmerman v. Union Railway Co., 3 App. Div. (N. Y.) 219; Brozek v. Steinway R. Co., 10 App. Div. (N. Y.) 360; Dunican v. Union R. Co., 39 App. Div. (N. Y.) 497. (b) By instruction numbered 2, the jury are told that if she knew the car was approaching (wherever it was and however it was, and although she was entitled to presume it would stop, before reaching the east end of the platform), then as a matter of law plaintiff was negligent, in getting on the track at all. This is palpable and fatal error. Laurent v. United Rys., 191 S. W. 992. (2) It was error to give instruction numbered 3, which told the jury that if she knew the car was approaching and could by the exercise of ordinary care have remained off of the track, then she was not entitled to recover.

As to this unique, ludicrous, but fatally harmful, instruction, the doctrine of *res ipsa loquitur* should apply. The thing (certainly) speaks for itself. (3) It was error to give the instruction on the credibility of witnesses here, where there was not only no effort at impeachment, but no contradiction of any witness. Keeline v. Sealy, 257 Mo. 498; Price v. Bldg. Co., 191 Mo. App. 404.

*T. E. Francis* and *Thomas Bond* for respondent.

(1) The demurrer to the evidence should have been sustained. (a) Because there being no duty on the part of respondent to stop the front end of the car at any particular point, there was therefore no negligence in running same beyond the east end of the platform. (b) Because the evidence is insufficient to establish a custom to stop the front end of the car west of the east end of the platform, so general, uniform, certain and notorious as to constitute a rule of conduct upon which appellant could rely in knowingly going in front of a moving car. Shields v. Sub. Belt Ry. Co., 87 Mo. App. 643; Percell v. Railroad, 126 Mo. App. 53; Pankey v. Railroad, 180 Mo. App. 199. (c) Because there is no evidence that under the last-chance doctrine respondent's motorman saw appellant in a place of danger in time to have stopped the car, or otherwise have avoided the accident. Keele v. Railroad, 258 Mo. 79; Paul v. Railroad, 152 Mo. App. 783; Zurfluh v. Railroad, 46 Mo. 642; Boecker v. Railroad, 240 Mo. 521; Hamilton v. Railroad, 250 Mo. 722; McGee v. Railroad, 214 Mo. 531; Roenfeldt v. Railway, 180 Mo. 564. (d) Because appellant was herself negligent and her negligence directly contributed to her injury. Paul v. Railroad, 152 Mo. App. 586; Cole v. Railway, 121 Mo. App. 610; Gunn v. Belt Ry. Co., 141 Mo. App. 314; Green v. Railroad, 192 Mo. 142; Holland v. Railroad, 210 Mo. 350; Slotler v. Railroad, 204 Mo. 640; McCreery v. United Rys., 221 Mo. 31. (2) Errors in instructions are harmless where a demurrer to the evidence should

have been sustained. Trainer v. Mining Co., 243 Mo. 359.

ROY, C.—Plaintiff sued for damages for personal injuries. The verdict and judgment were for defendant, and plaintiff has appealed.

The accident occurred at the intersection of Manchester and Tamm Avenues in St. Louis. Defendant has double tracks at that point, the south track being the east-bound. South of that track is a passenger platform, with its east end about the west line of Tamm Avenue. The latter street is not opened south of that point, except by a pathway leading across a footbridge over the river Des Peres to residence territory beyond. That path strikes the defendant's track just east of the platform, the exact distance not being shown. As it turns west to the platform it passes alongside the defendant's track in close proximity thereto. To what extent that path from the south is used by people passing across Manchester Avenue is not shown. From five hundred to a thousand passengers use that platform in a day.

The plaintiff, in company with two grand-daughters, who were about twelve years old, came from the south along that path, and seeing defendant's car approaching from the west, hurried to catch it. One of the children rushed upon the platform. Plaintiff was just turning west toward the platform when the car hit her, she evidently having got a little farther north than was safe. So far as we can ascertain from the evidence the path to the platform ran between a telephone pole and the track, there having been about thirty inches between the pole and the side of the car. It does not appear that there were any other persons waiting there for the car at that time.

Mr. Fish, a son-in-law of plaintiff, testified that he had previously waited there for the car about a dozen times, and had frequently traveled on that line, and that, about four months after the accident, he staid there

and watched seven or eight cars pass, and that it was their custom to stop with the front end of the car west of the end of the platform.

The plaintiff testified that for two years she had taken the car at that place every two or three weeks, and that she had never noticed the car come down where it came that morning, that they usually stopped the car back by the platform. She further testified:

"Q. Now, as you approached this stopping place at Tamm and Manchester Avenues, state whether or not you came along this traveled way across the Frisco and the Missouri Pacific tracks that has been mentioned? A. Yes, sir; I came over the bridge and along that path.

"Q. Now, as you neared the platform, did you see a street car coming from the west? A. Yes, sir; I seen a street car coming; I was hurrying to get it.

"Q. Now, just state what occurred from the time you noted the car coming until you were injured, in your own way? A. Well, my one little granddaughter ran on and this other one was with me and I was hurrying on, and I went on up this path, and when I got ready to turn, just as I went to turn, the car hit me and that is about the last that I knew of it.

"Q. Now, state whether or not you anticipated or expected the car to run down beyond the end of the platform? A. No sir.

"By the Court: Were there any other persons there to get on the car at that time? A. I think there were, but I don't know; I know my little granddaughter was up on the platform.

"By the Court: At the usual stopping place? A. She had run on ahead of us, the one.

"By the Court: She was at the usual stopping place to get on the car; is that it? A. Yes, sir."

The defendant asked an instruction in the nature of a demurrer, which was refused.

I. There was no sufficient proof of a custom of defendant to stop its cars without projecting the front end

beyond the platform. The plaintiff had never noticed

**Custom.** the cars come as far as they did that morning. Certainly not; she had no occasion to notice. Mr. Fish, the only other witness, evidently had never noticed where the cars stopped, for he states that, after the injury, he stood there and watched seven or eight cars, none of which projected beyond the platform.

Give all the testimony for plaintiff full credit, and it still falls far short of what is necessary to prove a custom of the defendant to so stop its cars.

In Pankey v. Railway Co., 180 Mo. App. 185, l. c. 199, the court said:

"To make a custom effective it must be shown to have been general, uniform, certain and notorious, known to the parties or so general and universal in its character that knowledge must be presumed. [Shields v. Railway, 87 Mo. App. 637; Boyd v. Graham, 5 Mo. App. 403; Sweet v. Leach, 6 Ill. App. 212; C. M. & St. P. Ry. Co. v. Lindeman, 143 Fed. 946.]"

II. Even if it was the defendant's custom, in stopping for passengers at that point, to so stop its cars, the

**Humanitarian Doctrine.** evidence in this case tends to show that plaintiff and the children were hurrying to get on the platform. There is no showing that there were other persons on the platform. The car, so far as the evidence goes, was not intending to stop there until the child rushed on the platform. The car was probably stopped at the earliest moment after those in charge of it found that it was necessary to stop there.

There is no room in this case for the humanitarian doctrine. The car was going east, plaintiff was hurrying north and just turning west to the platform. There was no reason to anticipate that she would get too close to the track. [Keele v. Railroad, 258 Mo. l. c. 74.]

The judgment is affirmed.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.