BESSIE ADELMAN, Respondent, v. CLEM B. ALT-
Man, Defendant, Respondent, MARTIN J. CAR-
ROLL and KANSAS CITY, MO., Defendants, Ap-
pellants. HENRY SIEBEN and RALPH J. SMI-
LEY, Defendants.

In The Kansas City Court of Appeals, February 20, 1922.

1. **NEGLIGENCE: Obstruction of Street and Sidewalk: Contractor and
City Could Have Reasonably Anticipated that Pedestrian Would
Use Street Where Sidewalk was Obstructed.** Where a pedestrian
was prevented from using a sidewalk by obstructions placed by a
building contractor thereon, and was compelled to use the street,
where she was struck by an automobile, *held*, that contractor and
city could have reasonably anticipated that persons would have
walked where plaintiff did.

2. ———: **Evidence Held to Show that Automobile Driven at Rapid
Rate of Speed, Striking Pedestrian Walking Alongside Obstruction
was Guided in, a Way that Was not Unusual.** In a suit against
a city and building contractor by a pedestrian injured by being
struck by an automobile while walking in the street alongside an
obstruction placed upon sidewalk and portion of street, *held*, there
was evidence showing that the automobile was guided in a way
that was not unusual for automobiles driven at a rapid rate of
speed.

3. **MUNICIPAL CORPORATIONS: Ordinances: Evidence Held to Show
Violation of Ordinance Prohibiting Unreasonable Occupation of
Street with Building Material.** Under an ordinance of Kansas City
(No. 5763, sec. 596), providing that not more than one-third of
roadway, nor more than one-half of sidewalk space or alley should
be used for piling or storing building material, where the roadway
was seventy-six (76) feet wide and the building material was
piled to within eleven and one-half (11½) feet of center of roadway,
the ordinance was violated.

4. ———: **Notice: In Action for Personal Injuries Against City it Was
not Necessary to Plead in Petition that Notice Thereof Had Been
Given.** Under section 8904, Revised Statutes 1919, providing that
"no action shall be maintained" against the city unless notice be
giving, "stating the place where, the time when such injury was
received," etc., a cause of action was not created thereby as the
same was given by the common law, and in an action by a pedes-

trian for damages against the city, it was not necessary to plead in the petition that notice was given, the giving of notice not constituting an element of the cause of action but being merely a matter of evidence.

5. ———: Evidence: Admission in Evidence of Permit Issued after Injury Allowing Placing of Building Material in Street not Injurious in View of Evidence and Instructions. The court did not err in admitting in evidence a permit allowing contractor to place building materials in street, which was issued after happening of injury, the same not being injurious to defendant city, in view of evidence and instructions offered by it.

6. ———: ———: Instructions: Word Customarily Defined: An Instruction Requiring Jury to Find that Automobile "Customarily" Ran at High Rate of Speed on Street at Place of Injury Justified by Evidence. In an action for damages to pedestrian injured by automobile while walking alongside of obstruction caused by building material placed in street, an instruction requiring jury to find that at the place and time of injury "automobile customarily ran at a high, reckless and dangerous rate of speed," *held*, not erroneous though evidence did not show every passing automobile ran at such speed, the word "customarily" being defined as "in the customary manner, ordinarily," and "custom" as "an ordinary or usual manner of doing or acting."

7. INSTRUCTIONS: An Instruction as to Permitting Obstruction in Street Held not Misleading in View of Other Instructions. An instruction requiring the jury to find the obstruction was caused by contractor, property owner and city having deposited and permitted to be deposited building materials in street and "that defendant city knew, or by the exercise of ordinary care should have known, of the location of said obstruction in time to have removed the same," could not have been misunderstood as there was no claim that the city deposited the material on the street and the duty of city under the facts having been correctly stated later in the instruction.

8. ———: An Instruction that Obstruction Extended Almost to Center of Street Held Warranted by Evidence. In an action for injury to pedestrian struck by automobile while walking alongside obstruction composed of building material deposited in street, an instruction that building material extended "almost to the center of street" was warranted by the evidence.

9. MUNICIPAL CORPORATIONS: Evidence Held to Show City had Reasonable Time to Remove Obstruction After Knowledge of Its Existence. Where the evidence showed that a police officer had been stationed for a month at the place where the building material

Adelman v. Altman.

had been placed in street and knew of the obstruction, *held*, that city as a matter of law had time to remedy the situation after it had knowledge of it.

10. INSTRUCTIONS: Instruction not Erroneous as Submitting a Question of Law. An instruction detailing facts necessary for jury to find in order to lay foundation of city's negligence, and then proceeding, "and if you further find that said defendants were negligent in said respects," was not erroneous as submitting a question of law.

11. PLEADING: Evidence: An Instruction Whether Unreasonable Amount of Street was Being Used for Building Material Did not Enlarge Issues Under the Pleadings. Where petition alleged defendants "negligently placed and deposited and caused and permitted to be placed . . . in the street space . . . thereby greatly and unreasonably obstructing" street, the allegation that an unreasonable amount of material was deposited in the street unreasonably obstructing it was broad enough to authorize the court to submit the issue as to whether an unreasonable amount of the street was being used.

12. MUNICIPAL CORPORATIONS: Ordinances: In Action for Injury Caused by Obstruction in Street the Giving of Peremptory Instruction in Favor of Property Owner Held not Error. Section 67, of Ordinance No. 38919, and section 580, of Ordinance No. 8499, of Kansas City, do not place any duty on property owner with reference to the issuance of a permit to building contractors to use not more than one-third of street for depositing of building materials, etc., as provided by Ordinance No. 5763, section 596, and the court did not err in giving a peremptory instruction in favor of property owner in a suit against the city, contractor and property owner by pedestrian for injuries received by being struck by automobile while walking in street alongside obstruction composed of building material placed therein.

13. INSTRUCTIONS: Not Error to Refuse Instruction Covered by Other Instructions. It is not error to refuse an instruction covered by other instructions.

Appeal from the Circuit Court of Jackson County.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Park & Brown* and *Achtenberg & Rosenberg*, for plaintiff, Respondent.

*Hogsett & Boyle* for respondent, Clem B. Altman.

*E. M. Harber* and *Francis M. Hayward* for appellant, Kansas City.

*Chas. M. Bush, R. W. Crimm* and *McCune, Caldwell & Downing, for appellant,* Carroll.

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment in favor of plaintiff and against the defendants, Carroll, Kansas City and Smiley in the sum of $1600 and defendants, Carroll and Kansas City, appealed to the Supreme Court thinking a constitutional question was involved, but the Supreme Court found otherwise and transferred the cause to this Court. Said appellants make the point that their instructions in the nature of a demurrer to the evidence should have been given.

The facts show that plaintiff, together with ten other young people, men and women, on January 9, 1916, shortly after midnight, were returning from a social gathering in Kansas City, Missouri. They traveled north on Troost avenue and on arriving at Fifteenth street turned east on the south side thereof. At the southeast corner of Fifteenth street and Troost avenue they encountered an obstruction caused by building material piled in the street by defendant Carroll, which compelled them to walk far out into the street, the sidewalk space having been excavated. When they arrived at a point a short distance east of Troost avenue on Fifteenth street in front of the obstruction and walking at the foot of the same, plaintiff and others in the party were struck by an automobile coming from the west on Fifteenth street and proceeding at the rate of twenty-five miles per hour. A number of the party were injured and others killed.

The owner of the automobile, Sieben, and the driver, Smiley, were joined as defendants with Carroll, the contractor, who was building a seven-story building at the

southeast corner of Fifteenth street and Troost avenue under a building a contract with the owners of the lot, Clem B. Altman and Frank G. Altman. These latter two were also made defendants. The case was not prosecuted as to Frank G. Altman, he having died. At the close of all the testimony the Court marked "given" an instruction in the nature of a demurrer to the evidence offered by the defendant Clem B. Altman, whereupon plaintiff took an involuntary non-suit as to said Altman with leave.

In two other suits growing out of the same collision and brought against the same defendants, the trial court sustained a demurrer to the petition and upon appeal, one to the Supreme Court (Shafir v. Sieben, 233 S. W. 419) and one to this Court (Daneschocky v. Siebel (Sieben), 195 Mo. App. 470), the action of the trial court was reversed and the causes remanded. The main legal points arising in the case at bar were settled in those cases. However, defendants, Carroll and Kansas City, being the only two appellants herein, attempt to distinguish the facts in this case from those before the court in those two cases, and we will discuss the particulars in which it is claimed that the facts in this case differ from those in the other two.

It is claimed that the petition in those cases "alleged that the building material extended nearly to the center of Fifteenth street, making the street, which was alleged to have been much traveled, too narrow for travel so that danger might reasonably have been anticipated by the city, the owner of the building, and the contractor."

The facts in the case at bar show that the buiding material was piled to within eleven and one-half feet of the center of Fifteenth Street which had a roadway of seventy-six feet; that that obstruction caused by the presence of the material came within four feet of the south rail of the east-bound street car tracks on Fifteenth street. The evidence further shows that the automobile which struck plaintiff was five feet, eight and one-half

inches wide. If cars of this kind traveled to the right of the center line of the street, where the ordinances required them to run, such cars would occupy approximately one-half of the street, in other words, the only space that would not be occupied by the car between the middle of the street and the obstruction was five feet, nine and one-half inches. Plaintiff was walking "double file" with a man companion in this narrow space. The fact that there was left only this restricted space for east-bound automombiles to travel, together with the fact that the street car tracks upon which street cars ran also occupied a space between the obstruction and center line of the street, and the further fact that the evidence shows that there was a great amount of vehicular travel on Fifteenth street, even at that time of night, are all circumstances from which the jury might reasonably say that on account of the amount of the street appropriated for building material the street for east-bound travel was unreasonably restricted, and that appellants could have reasonably anticipated a happening of the nature out of which this suit grows.

It is next insisted that in the Supreme Court case it was assumed that it was dark at the point where plaintiff was injured while the facts in the case at bar show that there was an arch light at the southwest corner of Fifteenth street and Troost avenue and red lanterns on the building material which was barricaded. In the Supreme Court cases the court said, l. c. 423—"The accident happened in the night, when it is most difficult to ascertain the position and movement of automobiles and other dangerous vehicles." We do not think that the decision of the Supreme Court turned upon this point but this incident is only recited as one of many in the case. However, the evidence in this case as testified to by Smiley, the driver of the automobile, was to the effect that the night was dark and "as you go toward an arc light things on the outside radius always seem darker than to what any other place does." He testified that

he did not see the members of this party until he struck them; that they looked like a shadow from the building material; that he did not see them until "when the light came back" which was too late. If this were a case where plaintiff had run into the obstruction the presence of barriers and lights would be very material but this is not that kind of a case. The evidence shows that plaintiff was walking with her back to on-coming automobiles and that the lights were of little value in this collision. All of these conditions could have been reasonably anticipated by the appellants, and taken together with all of the facts and circumstances in the case were not sufficient to make this case distinguishable from the Shafir case in the Supreme Court.

It is urged that the petition in the Shafir case alleged that plaintiff "was compelled" on account of the obstruction to walk "almost" in the middle of the street to avoid the obstruction; that the evidence in the case at bar shows that plaintiff was not compelled to walk in the street; that the immediate destination of the party was at a point north of the north side of Fifteenth Street a block east of Troost, and that they could have well and conveniently walked north on Troost to the north side thereof where they would have found an unobstructed sidewalk, thence east on the north sidewalk of Fifteenth street to Forest avenue, the first street east of Troost, where they intended to go; that plaintiff not only had this way available but could have used any part of the unobstructed roadway, which the evidence shows, was forty-nine and one half feet.

It appears in the facts of the Shafir case that the entire roadway of the street was not obstructed but that the south half was obstructed nearly to the middle of the street. There are no facts stated in the Shafir case to show how many feet of the roadway was unobstructed or whether there was a sidewalk on the north side of Fifteenth street. However, as we have already stated, the facts in that case showed that the roadway was ob-

structed almost to the center of the street, and the court no doubt assumed that there was a sidewalk on the north side where plaintiff could have walked. However, regardless of this, the word "compelled" is a comparitive term; plaintiff was not "compelled" in a strict sense to use any part of Fifteenth street. When she reached Fifteenth street and saw the obstruction she could have retraced her steps and gone to her place of destination by some other route or she could have entirely refrained from going to the place to which she was en route. However, she had the right to use the sidewalk on either side of Fifteenth street. She had a perfect right to use the street just as she was using it at the time she was struck and appellants well knew this and could have reasonably anticipated that pedestrians would have done just as plaintiff did. In using the south side of the street she was compelled to use the narrow space left between the obstruction and the center of the street which, as we have stated, appellants could have well anticipated. She was not required to use the roadway on the north side of the center of Fifteenth street. If she had done that she would have been in danger of fast driven automobiles that were constantly coming from the east on that side of the street, so she elected to walk as near the obstruction as she could. There is no doubt but that the jury might well find from the facts in this case that plaintiff was compelled to use the narrow space that she was using at the time she was injured, in the sense the word "compelled" is used in connection with situations of this kind. The real question is, could defendants have reasonably anticipated that persons would have walked where plaintiff did? The answer must be in the affirmative.

It is insisted that the collision was not "caused by the narrowness of the way or the rate of speed of the automobile or the darkness but because the driver of the automobile was drunk;" that because of some "drunken caprice" he turned his car into the crowd in

which plaintiff was; that "it was not fast driving but lack of guidance that caused the injury." The evidence shows that Smiley was driving his automobile astride the south rail of the east bound street car tracks at a speed of twenty-five miles per hour and that just before he struck plaintiff he turned his car .toward the south, that he turned it "very little." He testified, "When I turned south I saw the people and struck them." He had no time to stop after he saw them. He did not see them because "they looked like a shadow from the building material" piled in the street. Hhe testified that early in the evening he had taken three drinks of whisky and two bottles of beer but was not intoxicated. His testimony shows that he had a fairly clear recollection of what had happened. The jury were not required to believe that he was intoxicated. Defendant Carroll had given an instruction telling the jury that if they believed the injury was caused from the fact that "Smiley, while in a drunken condition operated the automobile at an excessive, high and dangerous rate of speed, and negligently ran against and injured plaintiff, and that said negligence was the sole cause of plaintiff's injury," then the verdict should be in favor of Carroll and the city. So there was evidence from which the jury could well say that Smiley was not drunk and that the automobile was guided in a way that was not unusual for automobiles driven at a rapid rate of speed.

It is insisted that the evidence fails to show that there was an unreasonable amount of building material stored upon the street, but from the facts, as we have stated them, the jury could well find that there was, even if the building to be constructed was a large seven-story one. [Shafir v. Sieben, supra, l. c. 423.] Aside from this, there was an ordinance of Kansas City (No. 5763, sec. 596), which was pleaded and introduced in evidence providing that "No person, firm or corporation shall use or occupy more than one-third of the roadway nor more than one-half of the sidewalk space or alley for piling or storing building material." The evidence shows, as we have

stated, that the roadway was seventy-six feet, the building material was piled to within eleven and one-half feet of the center of the roadway, in other words, 26½ feet of the roadway was occupied by the material, which was more than one-third of the entire roadway. The ordinance was clarly violated.

Defendant Kansas City, makes the point that the court erred in admission of the notice required under section 8904, Revised Statutes 1919. This section provides that: "No action shall be maintained" against the city unless a notice shall be given to the city "stating the place where, the time when such injury was received," etc. It is claimed that this notice was not pleaded and, further, on account of the fact that it was not pleaded the petition stated no cause of action against the city. The statute under consideration does not create a cause of action but the cause of action is given by the common law. The statute merely declares that the action may not be *maintained* until the notice is given. If the statute created the cause of action, the giving of the notice would constitute an element of the cause and would have to be pleaded but where the cause of action is created by the common law the giving of the notice is not a part of plaintiff's cause of action but is a matter of evidence. We think, then, that the giving of the notice need not be pleaded in the petition (Morrill v. Kansas City, 179 S. W. 769; Jacobs v. City of St. Joseph, 127 Mo. App. 669), and that the court did not err in allowing it to be introduced in evidence. The case of Reid v. City, 192 S. W. 1047, is not in conflict with this holding. In that case the allegations of the petition show that the statutory notice had not been given and for that reason the court held that the petition on its face showed that plaintiff had no cause of action against the city and consequently decided that the petition was bad and subject to a demurrer.

It is insisted by the city that the court erred in admitting in evidence the permit allowing the placing of

building materials in the street which was issued after the happening of the injury. It is contended that the admission of this testimony "was calculated to cause the jury to believe that previous acts of Carroll in putting it (the material) there and the city in permitting it to remain there were wrongful." The city made no objection to the introduction of this permit and if it was admissible as to Carroll, it could not have been excluded in any event but the city could limit its scope by instruction. [Knox v. Railway Co., 199 Mo. App. 64, 68.] However, we fail to see how the admission of the permit which was given to Carroll to place the material in the street, could have injured the city. The city was making strenuous efforts to show negligence on the part of Carroll and the property owner. The city, prior to the introduction of this permit, introduced in evidence the permit secured for the building of the structure which was signed by Carroll in which he agreed to conform to section 67 of Ordinance No. 38919. This ordinance related to the excavation of the space under the sidewalk in connection with the building. The city also had introduced section 596 of Ordinance No. 5763, supra, and also section 5080 of Ordinance No. 8499, providing for a permit for excavating under the sidewalk. The city had given an instruction telling the jury that the ordinances read in evidence "do not constitute any evidence of negligence or lack of duty on the part of Kansas City," and that "the mere fact . . . that defendant Carroll violated some ordinance as to blocking the street or sidewalk . . . would not make the city liable in damages because of its failure . . . to enforce such ordinances."

It is insisted that the court erred in giving plaintiff's instruction No. 1 as modified. This instruction required the jury to find that at the place and time of the injury "automobiles customarily ran at a high, reckless and dangerous rate of speed." It is insisted that there is no testimony that automobiles were so run. Webster de-

fines customarily as "In the customary manner, ordinarily," and the word custom as "An ordinary or usual manner of doing or acting." To prove custom it is not essential to show that the particular manner is never deviated from. [Glantz v. Chicago, Burlington & Quincy Ry. Co., 90 Nebr. 606.]

The evidence showed that Fifteenth street was a long, level street and at places very wide. It extended to the eastern limits of the city and on to Independence, Missouri, and at the place of the injury was a busy thoroughfare. Plaintiff's witness, Genova who was familiar with the way automobiles were run at the place in question, was asked how fast automobiles ordinarily ran along there at night. He answered, "They usually go at a high rate, from twenty-five to thirty miles per hour;" that he had obesrved as to how automobiles ran at this point for about six or seven months previous to the injury. Plaintiff's witness, Sadovsky, testified that he was familiar with the way cars ran at the time and place in question and had seen them run "all the way from ten miles per hour to perhaps forty miles an hour;" that the "*custom* there is to drive *real fast.*" Plaintiff's witness, Fisher, testified that during the first hours of the evening automobiles were run at from twenty to twenty-five miles per hour but as the night wore on they would go faster, possibly up to forty or fifty miles an hour at times. He observed that "every night" during the two years that he had been employed in the lunch room at Fifteenth and Troost. This witness further testified "I know that they race there over the car tracks there (there being car tracks on Troost avenue as well as Fifteenth street)—the automobiles do, in crossing the tracks out there at Fifteenth and Troost after the owl cars start to run. They don't pay any more attention to Ffteenth and Troost than if there wasn't a street crossing there."

Witness Clawson, who was proprietor of a barber shop near Fifteenth and Troost, testified that he located

there on the 12th day of October previous to the injury; that automobiles "always did drive along a pretty good lick along there. . . . I should judge for twenty to twenty-five miles an hour . . . up until about 8 or 9 o'clock; but after that they always speed up a little, when the traffic was not so heavy;" that he observed the rate of speed of automobiles there all the time that he was located at that place; that after eight of nine-thirty o'clock in the evening the cars would run "at thirty or thirty-five or forty miles per hour—some of them;" that fast driving of cars there had been a matter of daily comment; that police officers were stationed on the corner of Fifteenth and Troost to catch speeders; that quite a number of times he had seen men arrested there.

While the evidence may not conclusively show that every person who drove along Fifteenth street during the nightime ran his automobile in excess of the speed limit, which the evidence shows was twenty miles per hour, the evidence is such that the injury might well say that it was the custom of persons to drive, or that persons customarily drove, automobiles at the time and place in question "at a high, reckless and dangerous rate of speed."

However, it was not necessary for plaintiff to have the jury find that automobiles were "customarily" so driven and plaintiff assumed an unnecessary burden in using this term. The petition by way of inducement alleges that automobiles at that place customarily ran at high, reckless and dangerous rates of speed. However, in the charging part of the petition where the negligence of the defendants, Carroll, Altman and the city is set forth, it is alleged that these defendants "knew full well of the passage of automobiles at high and dangerous rates of speed. The gist of the cause of action pleaded, is that automobiles moved there at a high and dangerous rate of speed, all of which defendant knew when they placed the obstruction or allowed it to remain in

the street.  It was, therefore, unnecessary for the instruction to submit the matter of how automobiles customarily ran, and by doing so the instruction places upon plaintiff a greater burden than she was required to sustain.  The same answer may be made to the city's point that the instruction, after it had the jury find that automobile scustomarily ran at a high and reckless rate of speed at the place of the collision, only required the jury to find that the city knew of "automobiles going at a high and dangerous rate of speed" instead of it knowing that they were *customarily* run at high and dangerous rates of speed.

The instruction is complained of because it is claimed that it has the jury find that the city deposited the material on the street.  The instruction has the jury find "the obstruction was caused by defendants, Carroll, Altman and Kansas City having deposited and permitted to be deposited," etc.  It further has them find "that defendant Kansas City knew, or by the exercise of ordinary care should have known of the location of said obstruction in time to have removed the same."  We do not think that the jury could have misunderstood this instruction. There was no claim that the city deposited the material on the street and if the instruction has the jury so find, plaintiff in the instruction assumed an unnecessary burden and the duty of the city under the facts is correctly stated later on in the instruction.

It is insisted that there was no evidence that the building material extended "almost to the center of Fifteenth street" as set forth in the instruction.  The evidence shows that the sidewalk space of twelve feet had been excavated and therefore that part of the street could not be used, and, as we have already stated, twenty-six and one-half feet of the roadway was obstructed leaving only eleven and one-half feet of the roadway south of the center line of Fifteenth street unobstructed.  From these facts the jury might well find that the obstruction extended "almost to the center of Fifteenth street."

It is insisted that while the instruction requires the jury to find that the city knew of the obstruction in time to have remedied it, it does not have the jury find that the city had a reasonable time after knowledge, actual or constructive, in which to have remedied the situation. The evidence shows that a police officer of Kansas City had been stationed at the place where the building was being constructed to watch the place; that he was in the vicinity almost constantly for one month prior to the collision and that he knew that the obstruction had been present for a month. This witness was put on the stand by the defendant Kansas City. We do not hesitate in saying that under all the facts disclosed in the record the defendant city as a matter of law had time in which to remedy the situation after it had knowledge of it.

After detailing all the facts necessary for the jury to find in order to lay the foundation of the city's negligence, the instruction proceeds as follows, "and if you further find that said defendants were negligent in said respects." It is insisted that this was error for the reason that a question of law was submitted to the jury. Plainly there is no merit in this contention. It is also insisted that this part of the instruction last quoted merely submits to the jury the question as to whether defendants were negligent in knowing, doing and failing to do things hypothesized in the instruction. We think that no such assumption is made. [Costello v. Kansas City, 219 S. W. 386, 391; Sparks v. Harvey, 214 S. W. 249; Warnke v. Rope Co., 186 Mo. App. 30, 45.]

It is insisted that the court erred in modifying the city's instruction No. 1. This instruction tells the jury that the contractor had a right to deposit on the street a reasonable amount of building material and if the amount deposited was not unreasonable, their verdict should be for the defendants. In addition to telling the jury that they should find for the defendants if there was not an unreasonable amount of building material placed "in said Fifteenth street," the court amended the instruc-

tion by inserting "or that the same did not occupy an unreasonable amount of said street for that purpose, considering all the facts and circumstances in evidence." It is insisted that this insertion enlarged the issues. The petition alleges that the defendants "negligently placed and deposited and caused and permitted to be placed . . . in the street space . . . thereby greatly and unreasonably and unlawfully obstructing said street. An allegation that an unreasonable amount of material was deposited in the street unreasonably obstructing it, is certainly broad enough to authorize the court to submit the issues as to whether an unreasonable amount of the street was being used.

The city insists that the court erred in giving a peremptory instruction in favor of the defendant Altman. In this connection the city invokes the rule of law that when duties are imposed by statute or ordinance the owner of the premises cannot shift the load upon the contractor, for what the owner does by another the law regards as done by himself. Where the duty is imposed upon the owner by statute or ordinance such duty cannot be degelated. In connection with this the city points us to the building permit and the ordinances introduced in evidence, which it contends show that it was the duty of Altman to see to it that the street did not become in the situation that it was in at the time of the injury. We fail to find that either the building permit or ordinances introduced in evidence place and such duty upon defendant Altman, the property owner. The permit merely provides that the work should be constructed in a good, substantial, workmanlike manner in accordance with the ordinances of Kansas City.

Section 67 of Ordinance No. 38919 and section 580 of Ordinance No. 8499, provide that spaces under the sidewalks may be excavated and utilized in connection with the adjacent building, and provide how the sidewalk over the excavation shall be supported; that such excavation should be made only after a permit is given by the su-

perintendent of buildings. They also provide that the applicant for the permit shall give a bond agreeing to conform to "all the provisions and requirements of this article," which should indemnify the city against all ,oss or damage which it might suffer on account of the ._dintenance of such openings and excavation. There ._s nothing in the record to show that Altman secured any _uch permit although his contract with the contractor ┌iovides for the excavation under the sidewalk. There was nothing shown to be unlawful in connection with the excavating under the sidewalk in this case. The ordin-·ances provide for such excavation and the record shows it was complied with in every respect.

It was not the excavating under the sidewalk that contributed proximately to the injury to plaintiff but it was the piling of an excessive and unreasonable amount of building material upon the street, forcing pedestrians into the middle of the street that contributed proximately to plaintiff's injury. As we have already stated, there was nothing unlawful in relation to the excavation under the sidewalk. Of course, the fact that the sidewalk space had been excavated and could not be used by pedestrains made the obligation of appellants the greater not to obstruct the roadway and to see that it did not remain obstructed. There was nothing to prevent the contract from building a temporary sidewalk in the street. Section 596 of Ordinance No. 5763, which we have quoted, does not purport to apply to the property owner but to the person actually obstructing the street.

The contract between Altman and the contractor Carroll was introduced in evidence. By its terms there is no question but that Carroll was constituted an independent contractor. The contract was lawful and did not necessarily involve the commission of a public nuisance or danger to any other person if carefully done. It was not necessary in carrying out the terms of the contract to unreasonably clutter up the street with building material. As was stated in the case of The City of

Independence v. Slack, 134 Mo. 66, 76, 77,—'' . . . we know of no principle of law that imposes a legal obligation upon the owner of property adjacent to a public street to see that no obstructions to travel are placed or suffered to remain thereon, nor is there evidence of a contract with, or license from, the city which placed defendants under any peculiar obligation to keep the street secure while they were improving their property.''

Defendant Carroll complains that the court erred in refusing his instruction H. What was sought to be covered in this instruction was submitted in his instructions F and G.

The judgment is affirmed. All concur.