Gertrude DAVIS, Appellant,

v.

G. A. GATEWOOD and Donald Harper, Respondents.

No. 45205.

Supreme Court of Missouri,

Division No. 1.

March 11, 1957.

Riddle & Baker, Veryl L. Riddle, Charles H. Baker, Malden, for appellant.

Ward & Reeves, Caruthersville, for respondents.

DALTON, Judge.

Action for $33,589.94 damages for the alleged wrongful death of plaintiff's husband and for personal injuries and property damages sustained by plaintiff when a two-wheel trailer, owned by defendants and loaned to a third party for third party's personal use, became detached from third party's motor vehicle, while the vehicle was in operation on the public highway, and the trailer collided head-on with the automobile in which plaintiff and her husband were riding.

Count three of the petition seeking a recovery for property damages was dismissed before the trial. At the close of plaintiff's evidence on counts one and two the court directed a verdict for defendants and en-

tered judgment. Plaintiff has appealed and assigns error on the court's action (1) in striking out certain testimony admitted over defendants' objection, and (2) in directing a verdict for defendants.

The negligence assigned and now relied upon is that the defendants "carelessly and negligently permitted * * * Arvel Thompson to use and operate said trailer upon said highway when they knew or by the exercise of ordinary care could have known that the coupling and fastening of said trailer, by which said trailer was to be affixed to trucks and other vehicles for pulling, were defective and insufficient and would be dangerous to other persons and vehicles traveling on said highway in that said coupling and fastening did not have a bolt with a cotter key or pin or smaller bolt thereon to keep the nut of said bolt from becoming loose from said bolt and in that said coupling and fastening did not have safety chains thereon to securely attach said trailer to the vehicle pulling said trailer." There is no contention that any other assignment of negligence is supported by the evidence.

Plaintiff's evidence tended to show that on January 19, 1954, plaintiff and her husband, who lived northeast of Campbell, started for Kennett, Missouri, in their 1952 Plymouth automobile. As they went south on Highway 53, they saw a truck coming toward them (going north) at a high speed and they saw a trailer break loose from the truck and come "swaying" toward them. Plaintiff's husband drove his automobile to the side of the road and stopped, but the trailer "swayed in" and hit the front part of the automobile. The trailer tongue came through and struck plaintiff's husband a blow on the head killing him instantly, while plaintiff received arm, chest and head injuries. In view of the issues presented here we need not review the evidence concerning plaintiff's injuries.

The pleadings, in effect, admit that Arvel Thompson was operating the truck and trailer at the time and place mentioned; and that the trailer, which became disengaged and collided with plaintiff's automobile, was owned by the defendants. There is no contention that Thompson was the agent, servant or employee of defendants, or that the doctrine of respondeat superior applies. It is further admitted that plaintiff has settled her claim against Thompson both for the death of her husband and for her own personal injuries.

Plaintiff's evidence further tended to show that the defendants were partners doing business as the G. & H. Implement Company in Campbell, Missouri; and that they were engaged in the sale and service of farm implements. They owned and used in their business a two-wheel tilting implement trailer for hauling implements and machinery. Defendants had acquired the trailer in January 1953. It weighed about 2,000 pounds. It had a flat bed about six feet wide and ten or twelve feet long. A clevis or "U" type hitch was used in connecting the trailer to motor vehicles having proper attachments for that purpose. A high-grade $\frac{5}{8}$ inch steel bolt, six inches long, with a hexagon head and one and one-half inches of standard thread on the other end and a nut, were used in fastening the trailer to the pulling vehicle. The bolt was inserted through a hole in top of the clevis, then through a hole in the attachment on the pulling vehicle and then through a hole in the lower part of the clevis. The nut was then screwed on the threaded end of the bolt, up as far as it would go, and pliers were always used to tighten the nut. After the nut was tightened, there would be space left so that the connection could "jiggle" up and down, with a half inch of play, "otherwise it would be more dangerous." A new bolt had been put into use shortly before the time in question and had been used only once. Neither this bolt, nor any previous bolt, had ever come loose. The weight on the wheels of the trailer was pretty well balanced. Whether or not the trailer would tip up or down would depend on the height of the connection to the tow-

ing vehicle, but on Thompson's pickup it would be more or less balanced.

A few days prior to January 19, 1954, Arvel Thompson, a farmer, had asked defendant Harper to borrow the trailer in question and had said he needed it to move a gas tank. Harper had agreed to lend it, if it was not in use. On Sunday, before the 19th, Thompson appeared and said he was ready for it, and Harper told him where it was. Thompson was driving a G.M.C. pick-up truck, but did not say what vehicle he was going to use in pulling the trailer. Harper did not tell Thompson to drive slow-ly or "give him any instructions at all on the hitch." He did instruct him how to tilt the bed of the trailer by the use of two swivel bars that secured the bed to the chassis. He didn't tell Thompson anything about "how to tighten the bolt", because he (Harper) knew that Thompson was a farm-er and he "figured he would know how to do it." No cotter pins had ever been used on the hitch to Harper's knowledge. Har-per did tell Thompson where to get the bolt, told him it was either on the ground or on the front part of the hitch and "Thompson used the nut and bolt that were there and provided for use with this trailer." Harper knew that Thompson was to use the trailer on Highway 53, where there was much traffic.

Harper next saw the trailer on the morn-ing of January 19, 1954, after it had collided with an automobile on Highway 53. He saw the bolt that "hooked the trailer onto Thompson's truck." The bolt was through the hitch in the normal manner, through both holes, but the nut was missing. Ap-parently, the trailer was not then connected to the truck.

Plaintiff also offered the testimony of witness Jimmie L. Northington for the pur-pose of showing custom and usage as to the manner of hitching implement trailers to towing vehicles. The testimony was ad-mitted over objection and was subsequently ordered stricken and the jury instructed to disregard it. The testimony will be review-ed in connection with an assignment of er-ror.

The grounds assigned by defendants in their motion for a directed verdict, sus-tained by the trial court, included the fol-lowing: "Because under the pleadings, the law and the evidence, the plaintiff has wholly failed to make out any claim or case for relief. * * * Because the evi-dence wholly fails to establish any fact or circumstance from which the jury would be warranted in finding any negligence on the part of these defendants directly con-tributing to the injuries and losses to plain-tiff."

■ In her motion for a new trial, the plaintiff assigned error on the trial court's action in instructing the jury to disregard the testimony of plaintiff's witness Jimmie L. Northington concerning custom and usage. As appellant here, she makes the same assignment and insists that "the wit-ness was properly qualified to testify as to such (custom and usage) and said testimo-ny was competent, relevant and material to the issues of this action." Respondents, on the other hand, contend that the witness was not qualified; that his testimony con-cerned only the practice of certain individ-uals; and that it was insufficient to show a custom and his testimony was properly stricken.

Northington, a 29 year old mechanic, was employed by the Thompson Tractor and Implement Company at Malden, Missouri, taking care of incoming and outgoing equipment, trucks and trailers. He fre-quently used a freight or implement trailer of a type similar to the one involved in the mentioned collision. Such trailers are usu-ally used by implement dealers. He de-scribed the hitch on defendants' trailer as of the "clevis type." In the past several years he had "had occasion to come in con-tact with several trailers of this type and description." He had seen trailers of this type "all over most of the 'Bootheel' area," including the towns of Campbell, Holcomb, Risco, Parma, Malden, Poplar Bluff, Dex-

ter, Portageville and Kennett, and he had had occasion to observe the type of hitch used on these trailers. In three or four years he had examined the hitches on 25 or more such trailers representing a good percentage of the implement dealers in the territory, he believed 75 percent. Over defendants' objection that the witness was not qualified and had not shown sufficient knowledge to answer a question as to whether he knew "the type of hitch ordinarily and customarily used by dealers on this type of trailer in and around this vicinity and around the vicinity of Campbell, Missouri", the witness was permitted to testify that "most all the trailers we come in contact with either has the clevis type hitch or the ball and socket, one of the two, both having the safety chains, whichever you have, clevis type hitch or ball and socket hitch." Later, after the witness had stated that he was "acquainted with the type of hitch that is customarily used on this type of trailer", he was permitted over objection to state: " * * * the only implement and freight trailers that I have ever seen in this area either has the 'U' type hitch with a pin and safety chain, or the ball and socket hitch with safety chain." He said the trailers using the "U" type hitch on the tongue "most commonly has a pin that goes down through it with a drilled—what we call a safety pin, either a cotter key or bolt or snap hairpin, whatever you might have to keep in there, or most usually those pins have a drilled place in the bottom of them to put a safety chain or device on the pin * * * most have this device, hairpin or cotter key, some kind of device to keep this nut from slipping down."

Further objection was then made for the reason that the witness had not qualified as having knowledge of any custom or usage in Campbell or in the immediate vicinity; that the statement that he was aware of the custom and usage was nothing more than a legal conclusion; that he had not shown any facts to establish that a custom had existed; "namely, the open, notorious, and uniform use of the particular type of equipment"; and that "the witness by his own testimony has said that there were two types of hitches used, which further indicates that there is no uniform notorious way of hitching up these trailers, and for that reason we submit that there has been no proof of any custom existing." Later, the witness testified that there were only three implement trailers in Campbell, Missouri, two having ball and socket hitches and only one having the clevis type of hitch, "both having the chains." In Malden, Missouri, there were three implement trailers, two with clevis type hitches and one with ball and socket. He had seen a total of six such trailers there, but only two operating at one time. Of the 25 implement trailers the witness had seen in the area, some had clevis type hitches and some ball and socket hitches, perhaps 75 percent of the 25 had the clevis type hitch with a bolt and a cotter pin or safety bolt in the bottom of it. The rest had ball and socket hitches with safety chains. He had also seen some trailers with clevis type hitches from Osceola, Arkansas, and Sikeston, Missouri. Over a period of four years, prior to January 19, 1954, he had seen fifteen trailers with clevis type hitches. With reference to the alleged custom, the witness further said he was talking about the 25 implement trailers he had seen in the "Bootheel" area in four years. With reference to a custom to use a bolt with a pin, the witness testified:

"Q. Then based upon what you have seen, Poplar Bluff, Parma, Sikeston, and these other towns you have mentioned, you are testifying that there is a custom or usage in Campbell, Missouri, with respect to the use of this type of bolt here, Plaintiff's Exhibit F, is that your testimony? A. No, sir. I said it's most commonly used, the trailers that I have seen.

"Q. Then, you are not testifying that this is the customary bolt used, are you? A. No, sir.

"Q. Customary pin? A. No, sir."

Exhibit "F", showing a bolt with a pin or cotter key which had been identified as "some of what is used", was excluded from the evidence. Exhibit "F" was offered: "To show what type of hitch they used on some of the other trailers, same type trailers." Thereafter, on motion of defendants, the court instructed the jury as follows: "The jury is instructed at this time that the testimony of the witness about any matters involving custom is stricken, and the jury will disregard that testimony in which it relates to custom, customary hitches, or the custom in the matter of the hitch. That is stricken and the jury will disregard it."

■ It is appellant's theory that the testimony of witness Northington was sufficient to show that there was a custom or usage in the area of respondents' business that safety chains and bolts with cotter keys, or some other device to keep the nut from coming off, were used on implement trailers having the clevis type of hitch, as was used on respondents' trailer; and that the evidence of that custom or usage, together with the proof that respondents did not follow such custom and practice was sufficient to make a submissible case of the negligence pleaded. Appellant further contends that a bailor is liable to third persons injured by the bailee's use of the bailed property where the property has latent defects; and that the defects in the trailer hitch were latent. We find no evidence tending to show that the alleged defects were latent. Blankenship v. St. Joseph Fuel Oil & Mfg. Co., 360 Mo. 1171, 232 S.W.2d 954, 958.

■■ The word custom has been defined as an ordinary or usual manner of doing a thing. Black's Law Dictionary, Third Edition. A practice or course of acting. Goslin v. Kurn, 351 Mo. 395, 173 S.W.2d 79, 86. To prove custom it is not essential to show that the particular manner is never deviated from. Adelman v. Altman, 209 Mo.App. 583, 240 S.W. 272, 276; Goslin v. Kurn, supra. In order to prove custom the evidence must show a definite, uniform and known practice under certain definite and uniform circumstances. McMiens v. United Rys. Co., 274 Mo. 326, 202 S.W. 1082; Pankey v. Atchison, T. & S. F. R. Co., 180 Mo.App. 185, 199, 168 S.W. 274.

"Like all other questions of fact, a custom must be proved by evidence, which, if proved, is enough to put it beyond mere conjecture and into the realm of reality. Proofs of a custom cannot be said to be sufficient to submit that issue to the jury unless there is substantial evidence to show that what is claimed to be custom amounts to a definite, uniform, and known practice under certain definite and uniform circumstances." Shane v. Lowden, 232 Mo.App. 360, 106 S.W.2d 956, 962.

In support of her contention that the court erred in excluding the testimony of witness Northington, appellant relies upon the rule of law to the effect that evidence of custom and usage in the particular business is admissible on the question of negligence. Appellant cites Cassin v. Lusk, 277 Mo. 663, 210 S.W. 902, 906(9); Smith v. Harbison-Walker Refractories, 340 Mo. 389, 100 S.W.2d 909, 922(21); Asbury v. Fidelity Nat. Bank & Trust Co., 231 Mo.App. 437, 100 S.W.2d 946, 949(5). And see 65 C.J.S., Negligence, § 232, p. 1047; 65 C.J.S., Negligence, § 16, p. 404; 55 Am.Jur. 306, Sec. 44; 28 Am.Jur. 1015, Sec. 317. Appellant further contends that the testimony of witness Northington was sufficient to make a jury issue on the question of custom, citing Goslin v. Kurn, supra; Brock v. Mobile & Ohio R. Co., 330 Mo. 918, 51 S.W.2d 100. Appellant relies upon the holdings in the Goslin case to the effect that to make a custom effective, it must be shown to have been general, uniform, certain and notorious, known to the parties, or so general and universal in character that knowledge must be presumed. In the Brock case, appellant relies upon the holding that the existence of custom or usage is a matter of fact which may be proven as any other fact.

510

■■ Did the court err in striking out the testimony of witness Northington with reference to the alleged custom and in directing the jury to disregard it? "Whatever the subject of inquiry, only qualified witnesses may testify and to the extent a witness must know whereof he speaks (possess testimonial qualifications), every witness is an expert." Christian v. Jeter, Mo.Sup., 287 S.W.2d 768, 770(1–4); Pedigo v. Roseberry, 340 Mo. 724, 102 S.W. 2d 600, 606(4–7); Farber v. Missouri Pac. R. Co., 116 Mo. 81, 95, 22 S.W. 631, 20 L. R.A. 350. In order for a witness to be qualified to testify as to the existence of a custom, it should appear that he possesses knowledge thereof and he may be examined to show his means of knowledge and how such knowledge was acquired. Chapman v. Kansas City R. Co., Mo.Sup., 233 S.W. 177, 179(3); Derrington v. Southern R. Co., 328 Mo. 283, 40 S.W.2d 1069, 1071(1). And see 17 C.J. 525, Sec. 93; 25 C.J.S., Customs and Usages, § 33; 70 C.J. 83, Sec. 111; 32 C.J.S., Evidence, § 483, p. 139; 55 Am.Jur. 315, Sec. 55. A witness will not be considered competent to testify to the existence of a custom where his knowledge is confined to the practice of certain individuals only. 17 C.J. 525, Sec. 93; 25 C.J.S., Customs and Usages, § 33; Tuttle v. Kline's, Inc., 230 Mo.App. 230, 89 S.W.2d 676, 680(7); Baker v. J. W. McMurry Contracting Co., 282 Mo. 685, 223 S.W. 45, 50(13). And see Fuhr v. Dean, 26 Mo. 116, 119. Where a witness admits that he has no knowledge of the subject matter he has disqualified himself on that subject. Kregain v. Blake, 292 Mo. 498, 239 S.W. 495, 500(9). And see Rothwell v. Jamison, 147 Mo. 601, 609, 49 S.W. 503; 55 Am.Jur. 315, Sec. 55.

A review of witness Northington's testimony clearly shows that he was not a qualified witness to testify concerning the alleged custom and that his testimony was insufficient to make a submissible issue as to the existence of the alleged custom. The witness testified that he knew of one trailer being used in Campbell, Missouri, with a clevis type hitch (in the town where defendants had their place of business) and two trailers with clevis type hitches in Malden, Missouri, where the witness lived. Two other such trailers in Campbell and one in Malden had the ball and socket type of hitch. The witness said he had seen 25 or more trailers used by implement dealers in the entire area. He estimated that these 25 trailers represented 75 percent of the implement dealers and that 75 percent of the trailers he had seen were of the clevis type hitch. He also indicated that over a period of four years he had perhaps seen 15 trailers with clevis type hitches, the rest had ball and socket type. Clearly this evidence shows no custom or usage among implement dealers to use trailers with the clevis type hitch rather than the ball and socket type. He further said both types were customarily used. It is true that he also said that the clevis type hitch "most commonly has a pin that goes down through it" and that "most" such pins have a device, hairpin, or cotter key, some kind of device to keep the nut from slipping down, yet, when shown a photograph of such a bolt and pin, he said only that it was "most commonly used" on the trailers he had seen; and that he was not testifying that such was the "customary bolt used", nor the customary pin. No custom or usage of implement dealers in the area to use clevis type of hitches on their trailers, with bolt, nut and cotter key, was shown to the exclusion of other types of hitches.

■ The witness also said that both types of hitches used in Campbell, Missouri, had "safety chains"; and that this was true for the others he had seen. The term "safety chains" is not defined in the evidence, nor is their use explained. The sole and only method of use disclosed by the record is witness Northington's testimony to the effect that "most usually those pins have a drilled place in the bottom of them to put a safety chain or device on the pin." The witness also referred

to "the ball and socket hitch with safety chain." There is no evidence in the record concerning the use of safety chains as a part of the coupling or fastening to securely attach a trailer to the pulling vehicle, as is referred to in the pleadings; and there is no testimony as to the customary use of such chains for said purposes. There was no request that the trial court take judicial notice of the use of safety chains for the purpose mentioned in the pleadings, if such was a matter of common knowledge in the locality where the trial was had. Webster's New International Dictionary, Second Edition, defines a "safety chain" as "a normally slack chain for preventing excess movement between a truck and a car body sluing", and the word "slue" is defined as "to turn about a fixed point, usually the center of an axis, a spar." On the record presented the testimony of the witness on the issue of custom amounted to no more than a review of the usage and practice of certain individuals in the area and failed to show a general uniform, certain and notorious practice and usage under certain conditions within the rule stated in the authorities relied upon by appellant.

Further, the determination of whether a witness is qualified to give particular testimony rests largely within the discretion of the trial court, although such determination is reviewable for abuse. Ternetz v. St. Louis Lime & Cement Co., Mo. Sup., 252 S.W. 65, 71(10); Pickett v. Cooper, 354 Mo. 910, 192 S.W.2d 412, 417. In the last case the court said: "So, since it is often difficult to determine whether the witness is competent, it is said that the question whether sufficient opportunity to observe, and whether sufficient facts have been related to warrant the receipt of the opinion or inference, rests in the discretion of the trial court; and its action will not ordinarily be reviewed, although it is subject to reversal in extreme cases where an improper exercise of discretion appears." Even if we assume that the witness was qualified to testify as to a specific custom and practice, the facts testified to failed to show a custom to use a particular type of hitch.

There is no contention here that, even though the evidence did not show a uniform general custom or usage, it was admissible as a generally followed practice tending to show the standard of care exercised by ordinarily prudent persons in connecting such trailers to pulling motor vehicles. See 65 C.J.S., Negligence, § 232, p. 1050; Wigmore on Evidence, 3rd Ed., Vol. II, p. 489, Sec. 461; Crane v. Missouri Pac. R. Co., 87 Mo. 588, 595. Nor was the evidence sufficient for said purpose. The court did not err in striking the testimony of the witness and directing the jury to disregard that part relating to custom, customary hitches and customary manner of hitching.

■ Did the court err in directing a verdict for defendants at the close of plaintiff's evidence? It is unnecessary to review the evidence further. Plaintiff offered no evidence tending to show that the clevis type of hitch on defendants' trailer was dangerous or unsafe or that the nut, intended for use on the bolt, was likely to work loose and come off, if properly screwed on in the manner in which it was used by defendants, or, if the nut did come off, that the bolt would likely work up, jar out or otherwise release the trailer from the pulling vehicle. There was evidence that no "bolt" had ever come loose before; and that no "cotter pin" had ever been used to defendant Harper's knowledge. There was no evidence that a hitch without "safety chains" was dangerous or unsafe and no evidence concerning the purpose or use of such chains, except as stated above. There was·no direct evidence that "safety chains" were not provided for use on this trailer, however, no chains of any kind appear in the pictures of the trailer. The only other evidence bearing on the matter is the alleged statement against interest of defendant Harper, as follows: "Q. Have you ever

used any 'safety hitch' on this trailer? A. No, sir." A "safety hitch" is not described or otherwise referred to in the record.

We find no substantial evidence in the record to support the assignments of negligence relied upon by plaintiff to the effect that defendants negligently and carelessly permitted Thompson to use the trailer under the circumstances alleged in the petition. The court did not err in directing a verdict for defendants.

It will not be necessary to consider other matters set forth in the plaintiff's petition and upon which defendants rely to defeat a recovery by plaintiff.

The judgment is affirmed.

All concur.