JOHN G. ASBURY, RESPONDENT, v. FIDELITY NATIONAL BANK AND TRUST COMPANY, APPELLANT.—100 S. W. (2d) 946.

Kansas City Court of Appeals. December 7, 1936.

438

*Clarence C. Chilcott* for respondent.

*Morrison, Nugent, Wylder & Berger, Charles C. Byers* and *Henry W. Buck* for appellant.

CAMPBELL, C.—Plaintiff's wife on June 2, 1932, while walking down an interior stairway in the defendant's bank building in Kansas City, slipped, fell and was injured. He brought this suit to recover the damages resulting to him from the injuries, had a verdict and judgment. The defendant has appealed.

The evidence shows that the defendant constructed a building at the southeast corner of the intersection of Walnut Street and Ninth Street in Kansas City and occupied and used a part of that building as its banking house from February 1, 1932, until time of the trial of this cause; that the steps upon which plaintiff's wife slipped and fell were placed by defendant in its banking quarters for the use of its

employees and customers; that the treads of the steps were of pink Tennessee marble, honed finish; that the condition of the treads of the steps remained the same from the time they were constructed until long after plaintiff's wife fell. There was expert evidence to the effect that pink Tennessee marble is a "very hard marble" and that when that type of marble which has a honed finish is placed upon the steps of a stairway "we have always used something on the treads;" that a honed finish is a "dull finish" and "has a polish, but not as high as a high polish." The plaintiff introduced in evidence pieces of pink Tennessee marble, one of which was identical in finish with the treads of the steps in the stairway.

The defendant's vice-president, Mr. McDonald, was plaintiff's witness. He testified that a month or two after the bank was opened he had a conversation with another officer of the defendant bank in regard to placing safety treads on the steps of the stairway in question "because it was suggested by various customers of the bank;" that the officer with whom the conversation was had was under duty to oversee the proper maintenance of the "banking quarters."

The defendant's employee, Allee, was also plaintiff's witness. He said that the steps did not have "any appearance of being slick." The plaintiff's wife in giving her testimony said that she had passed up or down the steps six or seven times prior to her injury; that the steps did not "look slick," and that she did not know they were slick until after she fell; that after she fell she placed her hands upon the steps and then for the first time became aware of the fact that the steps were slick; that when she started down the steps she saw a woman and two boys "coming up in a great hurry," and that she stepped to the north, slipped and fell. The evidence shows that plaintiff's wife was an invitee of the defendant and that other persons had fallen on the steps.

The defendant presents seventeen assignments of error and these are restated under the heading "points and authorities." The defendant's first point is that the court erred in refusing its requested instruction in the nature of a demurrer to the evidence for the following reasons:

1. That there was no evidence showing an improper or dangerous condition of the steps; (2) no evidence showing negligence on the part of the defendant; (3) no evidence showing notice to the defendant prior to the fall of plaintiff's wife of an allegedly dangerous condition of the steps; (4) that plaintiff's wife was, as a matter of law, guilty of contributory negligence; (a) that plaintiff's wife was thoroughly familiar with the condition of the steps prior to her fall; (5) and that the proximate causes of the fall of plaintiff's wife were the approach upon the steps of some boys, and the movements made by plaintiff's wife in attempting to prevent their colliding with her.

There was substantial evidence warranting the jury in finding that the steps "has a polish," were slick, slippery and unsafe; that the defendant constructed and maintained the steps and, therefore, had actual knowledge of their true condition; that prior to the time plaintiff's wife fell "various customers" of the defendant suggested to it that safety treads should be placed upon the steps; that the steps had a dull finish, did not appear to be slippery or unsafe; that the unsafe condition of the steps was not obvious to plaintiff's wife or known to her until after she fell and that her fall was caused by the unsafe condition of the steps; that the jury examined samples of marble identical with the marble used on the treads of steps and, therefore, had opportunity to know the true condition of the steps.

The legal principle controlling the determination of the question as to whether or not the case was one for the jury has been stated as follows:

"The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is known to the owner or occupant and not known to the person injured that a recovery is permitted. . . . And, hence, there is no liability for injuries from dangers that are obvious, or as well known to the person injured as to the owner or occupant." [Vogt v. Wurmb et al., 300 S. W. 278.]

The evidence in the instant case considered in a light most favorable to the plaintiff brought the case within the rule approved in the Vogt case, *supra*.

The facts in regard to the question concerning the contributory negligence of plaintiff's wife are in legal effect the same as the facts in the case of Burnison v. Souders et al., 35 S. W. (2d) 619, in which this court held that the plaintiff therein was not guilty of contributory negligence as a matter of law. The court correctly ruled the request for directed verdict. [Glaser v. Rothschild, 120 S. W. 1; Hohlt v. Routt et al., 48 S. W. (2d) 386; State ex rel., Elliott's Department Store v. Haid et al., 51 S. W. (2d) 1015.]

The defendant's next point is that the court erred in admitting evidence over its objection showing that other persons had fallen upon the steps after the time plaintiff's wife fell thereon.

"The frequency of accidents at a particular place would seem to be good evidence of its dangerous character; at least, it is some evidence to that effect." [District of Columbia v. Arnes, 107 U. S. 591.]

The condition of the steps was not changed between the time they were constructed and the times when other persons fell thereon. And, hence, evidence showing that other persons fell upon the steps, was admissible. [Morrow. v. Missouri Gas & Electric Service Company, 286 S. W. 106; McCall v. City of Butler, 285 S. W. 1018; Lake Super-

ior Loader Company v. Huttig Lead & Zinc Company, 264 S. W. 396; Shouse v. Dubinsky, 38 S. W. (2d) 530.]

The next assignment is that the court erred in admitting, over the objections of defendant, evidence of custom in regard to the type of finish upon steps in other buildings, the treatment of such steps and the type of treads used in other buildings.

The plaintiff over the objections of the defendant was permitted to show by expert witnesses of many years' experience that it was the general custom and practice in Kansas City and vicinity to install safety devices upon the treads of steps such as the treads here involved. And though this action is not predicated upon the violation of a general custom, evidence showing violation of a general custom was competent "since the very existence of the general custom consists with the idea that prudent men may have followed it." [Cassin v. Lusk, 210 S. W. 902. To the same effect see 45 C. J. 709; Willis v. Buchanan County Quarries Company, 268 S. W. 102; Stein v. Buckingham Realty Company, 60 S. W. (2d) 912; Bruce v. Baer, 76 S. W. (2d) 423; Caldwell v. Payne, 246 S. W. 312.] The evidence was admissible although custom was not pleaded. [Pevesdorf v. Union Electric Light & Power Company, 64 S. W. (2d) 939.]

The defendant argues that the plaintiff was permitted to show "individual instances, both as to types of finish, and as to Mason treads and carborundum strips."

One of the expert witnesses was asked the following question: "Now, I want—do you ever put any cover on them (steps)? A. We use a Mason safety tread." The defendant's motion to strike the answer was denied. The answer of the witness, taken in connection with other parts of his testimony, clearly shows that he was speaking of the general custom and not of an individual instance.

The defendant contends that the court erred in admitting plaintiff's exhibits A. B. and C. These exhibits were samples of marble identical with the marble used upon the treads of the steps upon which plaintiff's wife fell. One of the exhibits had a honed finish on one side and a polished finish on the other. These exhibits aided by the jury in determining whether the steps were smooth and reasonably safe, as the defendant contends, or whether the steps were slick and slippery to the extent that they were unsafe and dangerous, as the plaintiff contends, and, for that reason, it was proper to receive exhibits in evidence. [Dudley v. Wabash R. C. Co., 150 S. W. 737; Connor v. Wabash R. R. Co., 129 S. W. 777; Morrow v. Missouri Gas & Electric Service Company, 286 S. W. 106; Bloecher v. Duerbeck, 92 S. W. (2d) 681.]

The defendant complains of the action of the court in admitting evidence relative to the use and effect of cleaning fluids used on the steps upon which plaintiff's wife fell. This evidence was elicited in the cross-examination of defendant's expert witness Kellar. This

witness in his direct examination testified concerning the custom, not only in Kansas City, but over the "entire country" concerning the finish used in steps in public buildings. The question to which objection is now made was asked after the witness, on cross-examination, without objection, had testified in effect that in cleaning honed finish of steps that some use water, others "use soap and water, and some use a special cleaner . . . and things like that." In view of the direct examination of the witness and the evidence admitted on cross-examination, without objection, the evidence was not improper. Moreover, the evidence was of little or no consequence.

Defendant assigns error to the action of the court in admitting evidence relating to the custom and practice in the use of handrails in other public buildings. What we have stated relative to custom in regard to the steps answers this point. Moreover, the defendant obtained an instruction withdrawing such evidence from the consideration of the jury. The error, if any, was cured. [Salmons v. St. Joseph & G. I. Ry. Co., 197 S. W. 35; Stith v. Newberry, 79 S. W. (2d) 447.]

In its next point the defendant says that the court erred in admitting evidence as "to the feasibility and practicability of the use of handrails upon walls, rubber matting upon steps, and Mason treads. . . ." The defendant obtained an instruction withdrawing the evidence of which complaint is now made. The error, if any, was cured.

The defendant urges that the court erroneously denied its request for leave to amend its answer by incorporating therein a plea of assumption of risk.

In the deposition of plaintiff's wife taken prior to the commencement of the trial of this cause she fully stated the facts and circumstances attending her fall and the cause thereof. The trial of this cause was commenced on April 4, 1935, and concluded April 9, 1935. The request for leave to amend was made near the close of the evidence and on the last day of the trial. The court properly refused the request, not only for the reason that it came too late, but for the reason there was no evidence showing that plaintiff's wife assumed the risk.

Plaintiff's instruction No. 1 told the jury that the defendant was a corporation and could act only by and through its agents, servants and employees. The defendant says that the instruction unnecessarily emphasizes the fact that the defendant was a corporation. The defendant could only act by and through its agents. Its agents, acting for it, constructed and maintained the steps. Hence, the jury was entitled to know that the acts of defendant's agents were the acts of the defendant corporation.

Plaintiff's instruction No. 2, of which complaint is made, is as follows:

"The Court instructs the jury that it is not necessary that defendant should have had actual notice of the unsafe and dangerous condition referred to in evidence, if you find there was an unsafe and dangerous condition. If you find that the condition of the staircase and the treads of the steps thereof was dangerous and unsafe and had existed a sufficient length of time before the injury, if any, to plaintiff's said wife, Margaret Asbury, to have enabled the defendant by the exercise of ordinary care and diligence to have known of the existence thereof and remedied the same then proof of actual notice is not necessary."

It would have been proper under the conceded facts to assume in the instruction that defendant had actual knowledge of the true condition of the steps. This for the reason that the defendant constructed and thereafter during the period in question maintained the steps in an unchanged condition. The instruction was not erroneous.

The defendant complains of that part of plaintiff's instruction No. 3 which allowed a verdict in favor of the plaintiff upon the jury finding that the steps were in an unusually smooth, slick and slippery condition and that by reason thereof they were dangerous and not reasonably safe for ordinary use. In criticising the instruction the defendant argues that there was no evidence that the steps were in an unusually smooth, slick and slippery condition and that if the steps were in such condition that "would not form a proper basis for a determination that 'they were dangerous and not reasonably safe for ordinary use.'" The evidence shows that the steps were in a slick and slippery condition and it was for the jury to say, under all of the facts and circumstances in evidence, whether or not that condition caused the steps to be "dangerous and not reasonably safe for ordinary use. The instruction was proper.

Defendant contends that plaintiff's instruction No. 6 is reversibly erroneous. The instruction follows:

"The court instructs the jury that if the jury find and believe from the evidence that the treads of the steps referred to in evidence were dangerous and not reasonably safe for persons to walk upon and pass over, if so, yet unless you find and believe from the evidence that said steps and the treads thereof at said place were visibly and obviously dangerous and unsafe, by reason of their said condition, so that an ordinarily prudent person under like or similar circumstances as Margaret Asbury in the exercise of ordinary care for their own safety, would not have attempted to walk upon and pass over them then you are instructed that Margaret Asbury was not guilty of such contributory negligence as would bar a recovery by plaintiff in this case."

The language of the instruction is legally the same as the language in instructions which have met the approval of Appellate Courts in

this jurisdiction. [Kiefer v. City of St. Joseph, 243 S. W. 104; Shouse case, *supra;* Stewart v. Shiedley, 16 S. W. (2d) 607.]

The next point is that the court erred in refusing defendant's requested instruction lettered E. This instruction would have withdrawn the evidence relating to custom and usage in regard to the finish upon the treads of steps. The defendant introduced evidence showing not only the general custom in Kansas City and vicinity but over the entire country in regard to the finish upon treads of steps in public buildings. The instruction would have withdrawn the defendant's evidence on that subject. It was properly refused.

The next point is that the court erred in refusing defendant's requested instruction lettered E½ in which defendant sought to have the jury told that the evidence concerning the falling of other persons upon the steps after June 2, 1932, was withdrawn. The evidence showing that other persons fell upon the steps was properly received and, for that reason, the instruction was properly refused.

The defendant contends that the court erred in refusing its instruction lettered I. That instruction follows:

"The court instructs the jury that if you believe and find from the evidence that the defendant, at and prior to the 2nd day of June, 1932, exercised ordinary care to have and keep the steps referred to in evidence in a reasonably safe condition for use by persons in the exercise of ordinary care for their own safety, your verdict will be against the plaintiff and in favor of the defendant."

The concluding part of the instruction "your verdict will be against the plaintiff and in favor of the defendant" is not preceded by the word "then" or any other word or term of the same meaning. The defendant obtained numerous instructions, each of which told the jury that upon finding the facts to be as stated in the instruction, "then your verdict will be against the plaintiff and in favor of the defendant." The failure to use the word "then" or a word or term of the same meaning immediately preceding the word "your" in the instruction lettered I, might have misled the jury.

The defendant's given instruction lettered H told the jury that if the steps were reasonably safe when used by a person of ordinary care for his or her own safety, "then your verdict will be against the plaintiff and in favor of the defendant."

None of the instructions in plaintiff's behalf allowed a verdict in his favor unless the jury found that the defendant had failed to exercise ordinary care to have its premises in a reasonably safe condition for the use of plaintiff's wife. Thus the refusal of instruction lettered I. did not hurt the defendant even though the instruction was in proper form. The instructions, considered as a whole, covered all of the questions proper to be submitted to the jury and it was therefore not error to refuse instruction lettered I. [Robison v. Chicago Great Western R. Co., 66 S. W. (2d) 180, 192.]

The defendant contends that the judgment was excessive and remained excessive after the *remittitur* in the sum of $1500. The verdict was in the sum of $5701.80. The *remittitur* reduced the judgment to $4201.80. The plaintiff's wife from the time of her injury was confined to a hospital until August 21 and her body during a great portion of that time was incased in a plaster cast. She was taken from the hospital to her home where she was confined in bed for a long period of time. She was unable to do her ordinary housework and used crutches for more than a year after her injury. At the time of trial she used a cane, limped, and one foot was turned in. Her hospital bill, doctors' bill and nurses' hire amounted to $1201.80. Her injury was painful and permanent. There is no reasonable ground upon which to base the claim that the judgment was excessive.

The seventeenth assignment of error says that the court erred in refusing to discharge the jury panel, as moved by defendant, because of misconduct of plaintiff's attorney upon *voir dire* examination. The defendant's motion for new trial states that the court committed twenty separate and distinct errors. The action of the court in refusing to discharge the jury is not one of them. The question presented in the seventeenth assignment is not here for review. The defendant had a fair trial. The judgment is affirmed. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.