DOUGLAS ALLEN, AGNES ALLEN, RICHARD A. BOYLE, MARY BOYLE, OSCAR E. BUDER, EUGENIA H. BUDER, OTTO BUDER and MAMIE D. BUDER, Respondents, v. SAMUEL KRAUS and ALMA KRAUS, Individually and as Co-Partners Doing Business Under the Firm Name and Style of SAMUEL KRAUS COMPANY, Appellants.—No. 40812.—215 S. W. (2d) 739.

Division Two, November 8, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, December 13, 1948.

*Sullivan, Findley & Lucas* and *Ralph T. Finley* for appellants.

522

524

*Oscar E. Buder* and *Eugene H. Buder* for respondents.

528

[739] WESTHUES, C.—Plaintiffs obtained a judgment against defendants in the sum of $12,086 for an alleged breach of contract. Failing to obtain a new trial defendants appealed.

Plaintiffs are the owners of an apartment building and an underground garage located on the northwest corner of Laclede Avenue and Buckingham Court in St. Louis, Missouri. The roof of the garage, made of concrete and covered with approximately eighteen inches of earth, was 180 feet long and 90 feet wide. Water was seeping through and the owners desired to have it repaired and made water-proof. They engaged the St. Clair Roofing Company to make the repairs, which company was represented by Mr. Walter J. Simon in all the matters concerning this lawsuit. It was necessary to remove the earth from the roof [740] for which purpose Mr. Simon entered into negotiations with defendants, who were engaged in that kind of work. Defendants submitted a bid in the form of a letter, which bid was accepted by Mr. Simon on behalf of the Roofing Company and plaintiffs. By this bid, prepared by the defendants, they agreed to remove the earth, and quoting from the bid, ". . . uncover approximately one half of the surface, stock pile the earth on the other half. Allow you to perform your work on the half uncovered then replace the earth on this half. Uncover the final half, stock pile over the completed portion, allow you to complete your work, then replace the final portion."

Defendants undertook to do the work, but after removing a considerable amount of earth from one side of the roof and placing it on the other side, the building sank at the point where the earth had been piled. Plaintiffs claim that the cost of repairing the damage was $17,729.02. The jury, by its verdict, fixed plaintiffs' damages at $12,086. The basis of plaintiffs' claim was, that defendants negligently piled too much earth over a small area thus overloading the capacity of the building causing it to sink at that point. Plaintiffs claim the earth should have been piled over a much wider area thereby distributing the load. There was a sharp dispute in the evidence as to the amount of earth placed over the area where the building sank. Plaintiffs' witnesses estimated the depth of the earth to have been eight to fifteen feet. Defendants' witnesses testified it was not piled higher than four or five feet. There was evidence to the effect that if the earth had been piled no higher than four or five feet, or if the load had been distributed over a wider area, no damage would have resulted. The jury, by its verdict, found against defendants on these questions of fact and we are not authorized to disturb that finding.

Defendants, however, claim that plaintiffs have no cause of action against them. This claim is based on the theory that the work was done as the contract provided it should be done; also, that the owners of the building, plaintiffs, and the roof contractor furnished the plans for the work and since it was done according to plan the owners have no recourse for the resulting damage. Many authorities are cited by appellants in support of this theory, but, we need not discuss or consider them because for the purpose of this case we may concede that to be the law. It is plaintiffs' theory that the work was not performed with ordinary skill and care. In other words, that defendants were required to exercise ordinary care and that in this they failed and therefore are responsible for the resulting damage.

Defendants insist that under the contract they were permitted to place all of the earth taken from one-half of the roof and heap it in one pile on the other half; that the word "stock-pile," as used in the contract, meant just that. It is insisted that plaintiffs, by their plan to repair one-half of the roof at one time while the earth from that half was piled on the other half, gave assurance to the contractor that the building would not sink under the load even if the earth was all heaped in one pile. That is defendants' interpretation of the meaning of the word "stock-pile," as used in the contract. It is plaintiffs' contention that defendants were negligent in placing so much earth within a small area. They also contend that it was the custom in such cases to distribute the load more evenly over the entire surface. Evidence was introduced that the roof would have carried the load easily if it had been distributed. Plaintiffs also offered some evidence that it was the custom in such cases to distribute

the load and not place all of the earth within one small area. Defendants assigned as error the ruling of the trial court in admitting such evidence. In deciding this question we must keep in mind that defendants prepared the contract and the word "stock-pile" was their way of expressing what was to be done with the earth. Defendants say "stock-pile," as used in the contract, authorized them "to stock-pile the earth in a pile or heap, to collect in a mass, to cover with heaps or in great abundance." We find the word "stock-pile" in Webster's New International Dictionary, Second Edition, defined to mean, "to heap up; to accumulate in piles." If defendants had made a number of piles and thereby distributed the load over a larger area it would still have been stock-piling; and had the work been done in that manner it would [741] not have been inconsistent with the written contract. We deem the evidence of custom in such circumstances to be competent. 45 C. J. 706, Sec. 87; 38 Am. Jur. 661, Sec. 20; Asbury v. Fid. Nat. Bank & Trust Co., 231 Mo. App: 437, 100 S. W. (2d) 946, l. c. 949 (5). If it was the custom in such cases to distribute the load over a large area of the roof, then plaintiffs and Simon, who entered into the contract, were justified in assuming that defendants would distribute the load over a wider area than was done.

Defendants, however, argue that the evidence was insufficient to establish any custom as to the manner of doing their work. We hold that to be immaterial in this case. We also hold that if defendants had piled the earth in a number of smaller heaps the work would have been performed according to contract.

This brings us down to the simple question of whether defendants, under their contract and the nature of the work, were required to use ordinary care in the performance of their contract. We are of the opinion that under the law defendants were required to exercise ordinary care. 45 C. J. 883, Sec. 318; 38 Am. Jur. 661, Sec. 20; Flannery v. St. Louis Architectural Iron Co., 194 Mo. App. 555, 185 S. W. 760, l. c. 761 (1, 2).

We are now confronted with the final question of liability. Did the evidence justify a finding that defendants were negligent in heaping so much earth within a small area? We think so. The roof was 90 feet wide and 180 feet long. Defendants knew that the roof covered a garage and that it must necessarily have been supported by pillars. It seems but common sense that the question of whether the capacity of the supports would be suffifficient to carry such a large load would suggest itself to a man, exercising ordinary care and prudence, who had had experience in that line of work. No contention is made by defendants that the earth could not have been piled over a much wider area. On the contrary there was evidence that

this could have been done. In such circumstances it was a case for a jury to decide.

Appellants urge that instruction number one, given at plaintiffs' request, was erroneous. We have examined the many complaints leveled against the instruction. A majority of the points briefed are based on the theory of non-liability which we have considered and decided adversely to defendants' contention. Most of defendants' points are based on the meaning of the word "stock-pile." Note one of their objections to instruction number one:

"The said instruction has the effect of making a new contract for the parties, that is to say, a contract to stock-pile the earth on the south half of the garage at such a height and at such a place as to 'not greatly overload' the portion of the roof upon which the earth was piled instead of a written contract for stockpiling the earth on one-half of the roof, and then on the other half, without restrictions as to the height of the pile or piles, or the distribution of the weight thereof on the roof."

We are unable to agree with that theory. What we have previously said disposes of this point. Again, appellant says that instruction number one gave the jury a roving commission to find for plaintiffs regardless of defendants' duties and obligations under the contract. Instruction number one in substance authorized a verdict for plaintiffs if the jury found that defendants removed a large amount of earth from the north side of the roof and negligently piled it on a narrow strip at the south end thereof, and that in the exercise of ordinary care they should have foreseen that such piling would damage the building. The question of defendants' negligence, proximate cause and damage were all submitted in instruction number one. We find that the instruction required the jury to find specific facts before a verdict was authorized. It certainly did not give the jury a roving commission.

Instructions given at defendants' request authorized a verdict for defendants if the jury found that the building would have been damaged even if the weight and load had been spread over a wider area. The jury was also instructed to find for defendants if the footings of the foundation of the building were such that the building would have been damaged even if the load had been spread evenly. Contributory negligence [742] on part of plaintiffs was also submitted as a defense. We find that the jury was fully instructed on all of the defenses to which the defendants were entitled under the law.

We have considered the points briefed and find that the trial court protected the defendants' rights by its rulings and also by the instructions given. The verdict of the jury in such circumstances is

binding on appellate courts. The judgment is affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.