**PREFERRED PHYSICIANS MUTUAL MANAGEMENT GROUP,**
Appellant,

v.

**PREFERRED PHYSICIANS MUTUAL RISK RETENTION, et al.,**
Respondent.

**No. WD 51107.**

Missouri Court of Appeals,
Western District.

Jan. 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 1996.

Application to Transfer Denied
April 23, 1996.

James Maxwell Yeretsky, Kansas City, for Appellant.

John Muir Kilroy, Thomas Scott Stewart, Kansas City, for Respondent.

Before FENNER, C.J., P.J., and BRECKENRIDGE and SMITH, JJ.

FENNER, Chief Judge.

Preferred Physicians Mutual Management Group, Inc., ("Management Company") appeals from the trial court's March 15, 1995 Order sustaining the Motion to Dismiss All Claims of respondents Gerald F. Tuohy, M.D., Edward C. Mills, and Gerald F. Tuohy Management Services ("TMS"), as to Management Company's claims of breach of fiduciary duty, tortious interference with a contract, negligence, and civil conspiracy in its First Amended Petition.

In 1987, David A. Schoenstadt, M.D., and James R. Jorgensen, C.P.A., formed Management Company and Preferred Physician Mutual Risk Retention Group ("Insurance Company") to provide medical malpractice insurance to high quality, low-risk anesthesiologists. From their inception, the two companies have had an interwoven existence. Dr. Schoenstadt and Jorgensen recruited a group of investors to contribute, primarily in the form of surplus notes and loan guarantees, the large amount of funds needed for the capital and reserve requirements of the new Insurance Company. In conjunction with the formation of Insurance Company, Management Company was created to provide exclusive, comprehensive management and operational services to Insurance Company and to provide a vehicle for the recoupment of the investors' financial investment in Insurance Company. The shareholders in Management Company provided all of the capital required to start Insurance Company business.

From the inception of Insurance Company in 1987 until March 1994, the business relationship between Management Company and Insurance Company was continuous and ongoing. Since its inception, Management Company has derived all or substantially all of its revenues from its contractual arrangements with Insurance Company. The business relationship was initially governed by management agreements that were replaced in July 1991 by a service contract between the two entities. The contract provided that Management Company was to provide all requisite services and employees to accomplish the business purposes of Insurance Company, including the provision of a claims

department, an underwriting service, a department for processing and servicing policies, an accounting department, a marketing department, data processing services, office services, investment services, reinsurance placement, and the hiring of all employees for Insurance Company. Management Company's hiring duties included the hiring of individuals to be elected as officers of Insurance Company who were to act solely as officers of Insurance Company and subject to the control of Insurance Company board of directors. The initial term of the service contract was to run until January 1, 1995, and automatically renew for five year terms thereafter unless terminated pursuant to grounds within the contract.

The relationship between the companies appeared successful, as Insurance Company rapidly grew with the assistance of Management Company, insuring approximately 2,300 physicians. During this initial growth period, Management Company, with the personal guarantees of its principals, assigned the management contract with Insurance Company in order to secure a loan in excess of $3 million to provide necessary additional capital and surplus for Insurance Company.

From the time of the inception of the companies until his death in December 1991, Dr. Schoenstadt monitored the day-to-day operations of Insurance Company pursuant to the management agreements and service contract, closely supervised and managed the key office employees, was responsible for all Management Company and Insurance Company operations, and served as the interface between Management Company and Insurance Company. In December 1991, in light of a sudden terminal illness, Dr. Schoenstadt approached Dr. Tuohy and asked him to "help take care of the company," as Tuohy was a shareholder of the closely-held Management Company and a member of Insurance Company board of directors. Schoenstadt asked Tuohy to assume a number of executive responsibilities that Management Company had delegated to Schoenstadt under the service contract.

Prior to Dr. Schoenstadt's death, Tuohy's role in the two companies was limited. He was a shareholder of Management Company, but did not serve in an executive position. As a shareholder, he received dividends totalling over $175,000 as a direct result of the performance of Management Company under the service contract. Tuohy was also President of Insurance Company, and sat on the board of directors as the company president. Management Company claims that Tuohy's activities as Insurance Company president were limited to lending his name to ghostwritten marketing letters and serving in the peer review program that screened applicants for insurance.

Tuohy accepted Schoenstadt's offer to provide executive services on behalf of Management Company to fulfill duties under the service contract, and along with Dr. Steven Kanter and Jorgensen, continued to fulfill the duties and obligations of Management Company through the summer of 1993. Pursuant to his acceptance of Schoenstadt's offer, Tuohy negotiated with Jorgensen, acting on behalf of Management Company, to receive an amount of $5,000.00 per month as personal compensation for Tuohy's management services, to be paid directly to TMS, Tuohy's management corporation. In return, Tuohy exercised personal executive authority for Management Company in providing management services to Insurance Company, including, but not limited to, relations with Insurance Company's board of directors on behalf of Management Company, personal supervision of key operating personnel, whether employed directly by Management Company or Insurance Company, interaction with legal counsel, regulatory officials, and competitors, and supervision of claims review, underwriting review, and some marketing activities.

During the time Tuohy was serving as the primary management consultant from Management Company to Insurance Company, Mills was the chief executive officer of Insurance Company and president of Management Company, exercising his power at Management Company to issue and sign checks to the shareholders, including Tuohy, in payment of fees earned from Insurance Company.

During the summer of 1993, Kanter, Jorgensen, and the shareholders of Management

Company began to question the management style and ability of Mills as CEO of Insurance Company, specifically questioning his underwriting policies, claims handling, and budget control. Management Company sought a merger partner for Insurance Company, but these efforts were met with hostility on the part of Insurance Company.

At this same time, Management Company alleges that Tuohy was secretly negotiating an employment relationship directly with Insurance Company to the exclusion of Management Company, claiming that Tuohy's new compensation and employment relationship with Insurance Company was formalized at the October 1993 meeting of Insurance Company board of directors. After the October board meeting, Tuohy and Mills began to demand sweeping changes in the service contract with Management Company. Management Company claims that Tuohy and Mills began to secretly and systematically interfere with Management Company's efforts to review, monitor, and direct the activities of its employees, and to withhold financial and other information needed for proper operation of its business affairs, causing the relationship between the two companies to deteriorate. Management Company alleges that while subverting the relationship between the companies, Tuohy and Mills continued to outwardly project to Management Company and its shareholders that they were faithfully and loyally performing their duties to Management Company as obligated by their positions and contracts with it.

Finally, Management Company claims that Tuohy, for personal motive of prestige and financial gain, induced or caused to be induced, the board of directors of Insurance Company to unilaterally terminate the business relationship with Management Company. In July 1993, Insurance Company converted all of Management Company's employees to its own use, effectively locking Management Company out from performing its management duties for the Insurance Company.

Management Company filed suit against Insurance Company on April 1, 1994, seeking specific performance and damages for an alleged breach of the service contract. On September 30, 1994, Management Company filed its First Amended Petition naming Tuohy, TMS, and Mills as individual defendants for the first time. The claims against these defendants are based on the alleged oral agreement between Tuohy and Management Company for Tuohy to provide executive services for Management Company and to fulfill duties under the service contract on behalf of Management Company. Management Company alleged that Tuohy and TMS breached their fiduciary duties to Management Company, that they tortiously interfered with Management Company's business expectancy derived from the relationship with Insurance Company, and that if such relationship was terminated because of Management Company's failure to provide management services as alleged by Insurance Company, the failure was directly and proximately caused by the negligence of Tuohy and TMS in failing to provide adequate management services as delegated to them by Management Company. Finally, Management Company alleged that Tuohy, TMS, and Mills engaged in a civil conspiracy to cause Insurance Company to wrongfully terminate its relationship with Management Company.

On November 29, 1994, the trial court entered summary judgment in favor of Insurance Company and against Management Company on the issue of the nature of the service contract, finding that it was a contract of indefinite duration and thus terminable at the will of either party. That decision was adjudged appealable and taken to this court. In an opinion by Judge Patricia Breckenridge in *Preferred Physicians Mutual Management Group, Inc. v. Preferred Physicians Mutual Risk Retention Group,* 916 S.W.2d 821 (Mo.1995), this court determined, *sua sponte,* that Insurance Company's counterclaim that the service contract was terminable at will clearly pled and prayed for declaratory judgment and that because Insurance Company had the ability to assert the substance of the claim for declaratory relief as a defense that Insurance Company had an adequate remedy. Therefore, use of the declaratory judgment act was held to be improper. This court determined

that the counterclaim failed to state a claim on which relief could be granted and reversed the trial court's grant of partial summary judgment. Consequently, as we face this appeal, the issue of the terminability of the service contract is one of fact as yet to be determined.

On December 5, 1994, Tuohy, TMS, and Mills filed a motion to dismiss all of Management Company's claims against them, essentially claiming that because the trial court had determined the service contract to be terminable at will, it should follow that Management Company's claims of breach of fiduciary duty, tortious interference, negligence, and civil conspiracy were rendered moot. On March 15, 1995, the trial court granted the motion to dismiss these claims. This appeal followed.

## I. *STANDARD OF REVIEW*

In the case at bar, Management Company's claims against Tuohy, TMS, and Mills were dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss for failure to state a claim is solely a test of the adequacy of a plaintiff's petition. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). In reviewing the trial court's dismissal based on the failure to state a claim, an appellate Court determines if the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). All of plaintiff's averments are assumed to be true, with no attempt made to weigh any of the facts alleged as to whether they are credible or persuasive. *Nazeri*, 860 S.W.2d at 306. The petition is reviewed in an almost academic matter to determine if the facts alleged meet the elements of a recognized cause of action or a cause that might be adopted in the case. *Id.* The facts as outlined above are cast in a manner consistent with these principles.

## II. *SUFFICIENCY OF MANAGEMENT COMPANY'S PETITION*

The trial court dismissed four counts of Management Company's petition alleging misconduct on the part of Tuohy, TMS, and Mills. The sufficiency of Management Company's pleading must be evaluated separately as to each count.

Before analyzing each claim, we first address the argument of Tuohy, TMS, and Mills that because the trial court sustained the motion for partial summary judgment as to the nature of the contract, determining that it was terminable at the will of either party, all claims against them individually must be dismissed because they were based on Management Company's "mistaken belief that the service contract was improperly breached by Insurance Company in 1994." As explained earlier, this court reversed the trial court's grant of partial summary judgment on this issue in an earlier proceeding. Consequently, the arguments of Tuohy, TMS, and Mills relying on the earlier trial court ruling are without basis. For our purposes, the nature of the service contract is a fact issue that will be considered in a light consistent with Management Company's allegations.

### A. *Breach of Fiduciary Duty*

Management Company's petition must allege facts that satisfy the basic elements of a claim for breach of fiduciary duty by Tuohy in order to survive a motion to dismiss for failure to state a claim upon which relief can be granted. Breach of fiduciary duty is a claim arising in tort, therefore Management Company must establish that a fiduciary duty existed between it and Tuohy, that Tuohy breached the duty, and that Tuohy's breach caused Management Company to suffer harm.

First, Management Company must sufficiently allege that there was a fiduciary relationship between it and Tuohy. Missouri law is clear that an officer or director of a corporation has a fiduciary duty to protect the interests of the corporation. *Bayne v. Jenkins*, 593 S.W.2d 519, 532 (Mo. banc 1980); *Fitch v. J.A. Tobin Constr. Co.*, 829 S.W.2d 497, 504 (Mo.App.1992). Under the facts of the case at hand, it is clear that Tuohy owed a fiduciary duty to Insurance Company, as he served as its president and chairman of the board of directors. Howev-

er, Tuohy did not serve as an officer of Management Company, where he was merely a shareholder in the closely held corporation.

Regardless of the fact that Tuohy did not serve as an officer of Management Company, Management Company argues that its petition sufficiently pleads a fiduciary relationship between it and Tuohy in two ways: (1) a fiduciary relationship was created by contract when Tuohy agreed to accept compensation for his management services provided on behalf of Management Company to Insurance Company (essentially alleging an agency relationship between Management Company and Tuohy); and (2) Management Company reposed a special trust and confidence in Tuohy based on his representations to it that he could be relied upon to protect Management Company's interests, his exercise of executive authority in his relationship with Insurance Company on behalf of Management Company, and his status as a shareholder in Management Company. Appellant's first argument is sufficient to satisfy this element of the claim.

With regard to its first argument, Management Company alleges that Tuohy had no role in Management Company other than that of a shareholder prior to Schoenstadt approaching him and asking him to take over some of the executive duties previously delegated to Schoenstadt under the service contract. Tuohy then negotiated a compensation agreement with Management Company to provide management services to Insurance Company on behalf of Management Company. While not expressly declaring so in its petition, it is clear Management Company alleges these facts establish an agency relationship between it and Tuohy. The existence of the agency relationship is a reasonable inference from the pleaded facts.

■ An agent is a fiduciary with respect to matters within the scope of his agency. *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. banc 1993). Accepting the creation of the agency relationship as averred by Management Company, Tuohy would owe Management Company a fiduciary duty with respect to the management services he was providing to Insurance Company. Such a relationship between Tuohy and Management Company, in addition to Tuohy's fiduciary relationship with Insurance Company, is not contrary to Missouri law. Simply put, Tuohy owed a fiduciary duty to both entities. Maintaining a dual role in two entities involved in a corporate business relationship is not a per se breach of one's fiduciary duty. *James E. Brady & Co. v. Eno*, 992 F.2d 864, 868 (8th Cir.1993); *Linwood State Bank v. Lientz*, 413 S.W.2d 248, 257 (Mo.1967). Transactions involving the two entities, however, are scrutinized to ensure that they are "fair, open and in the utmost good faith." *Brady*, 992 F.2d at 868; *Ramacciotti v. Joe Simpkins, Inc.*, 427 S.W.2d 425, 432 (Mo.1968). In order to survive the motion to dismiss for failure to state a claim, however, it is sufficient that the existence of the relationship is established within the pleadings; we need not address whether the transactions between Management Company and Insurance Company were fair, open and in the utmost good faith at this time.

Once Management Company pleads the existence of a duty, it must also plead a breach of the duty, causation, and harm. Management Company's petition alleges that Tuohy's actions in negotiating an employment relationship directly with Insurance Company, whereby he would provide Insurance Company's management services to the exclusion of Management Company, constituted a breach, that said breach interfered with Management Company's reasonable expectation of continuing benefits under the service contract or caused termination of the service contract, leading Management Company to suffer damages in the form of loss in value of the company and lost income, including management fees and expenses. These allegations are sufficient to fulfill the requirements for Management Company to state a claim for breach of fiduciary duty against Tuohy. The trial court erred in dismissing the breach of fiduciary duty claim against Tuohy.

■ Management Company also claims that TMS, Tuohy's management corporation of which he is the principle shareholder, also had a fiduciary relationship with Management Company. Reviewing the petition,

Management Company alleges that Tuohy is the principle shareholder of TMS, that compensation for Tuohy's management services on behalf of Management Company was paid to TMS, and that as principle of TMS, Tuohy induced Insurance Company to unilaterally breach the service contract. No other mention of TMS is made by Management Company in pleading the alleged breach of fiduciary duty against TMS. It is not alleged that there is any agreement between Management Company and TMS directly, other than that Tuohy's wages were paid to TMS. There is simply no allegation that the discussions with Tuohy involved anything more than negotiations between Management Company and Tuohy individually, rather than Tuohy as a principal of TMS. Additionally, no mention of TMS is made in the prayer for damages based on the alleged breach of fiduciary duty. Management Company's pleading is not sufficient to support a breach of fiduciary duty claim against TMS. The trial court's dismissal of the breach of fiduciary duty claim against TMS is affirmed.

### B. *Tortious Interference with Contract*

In order to establish a claim for tortious interference with a contract, Management Company must show (1) the existence of a contract or *valid business expectancy;* (2) knowledge by the interfering party of the contract or business relationship; (3) intentional interference by the interfering party which induces the breach of contract or relationship; (4) the absence of justification; and (5) resulting damages. *Nazeri,* 860 S.W.2d at 316. The existence of this claim is not dependent upon the existence of a contract between Management Company and Insurance Company as Insurance Company argues; the existence of a business expectancy between the parties is sufficient to satisfy the first element of the cause of action. Management Company's petition clearly pleads the existence of a business expectancy based on its relationship with Insurance Company.

As to the second element of a tortious interference with a contract claim, Management Company pleads that Tuohy, on account of providing executive services on be-half of Management Company, his status as a shareholder of Management Company, and his position as president and a member of the board of directors of Insurance Company, had personal knowledge of the service contract between the two companies. Additionally, Management Company pleads that TMS, through its principal, Tuohy, also had knowledge of the service contract. These allegations, taken as true, are sufficient to satisfy the second element of a tortious interference with contract claim against Tuohy and TMS.

As to the requirement that there be intentional interference by the interfering party or parties, Management Company pleads that Tuohy switched his allegiance in search of personal prestige and financial gain in derogation of his duties to Management Company when he, as an individual and as a principal of TMS, deliberately, wrongfully, and without justification interfered with the business expectation of Management Company by inducing the board of directors of Insurance Company to unilaterally breach the service contract. This allegation clearly satisfies the requirement of an intentional interference on the part of Tuohy and TMS to support a claim of tortious interference with a contract against them.

Next, Management Company must sufficiently plead the absence of justification on the part of Tuohy and TMS for their alleged actions. Absence of justification is the absence of any legal right to take the action complained of. *Meyer v. Enoch,* 807 S.W.2d 156, 159 (Mo.App.1991). If a party had a legal right to terminate the contract, any claim against that party for tortious interference must fail. *Id.* Management Company avers that the acts of Tuohy and TMS were not justified because they were in contravention to Tuohy's representations to Management Company that he would protect the interests of Management Company under the service contract in providing executive services to Insurance Company, violating his position of trust and confidence with Management Company. This allegation, however, ignores the fact that Tuohy also had duties to Insurance Company as its president and a member of the board of directors.

■■ A corporate officer, acting within his or her authority, is privileged to induce a breach of a corporate contract if he or she uses no improper means, acts in good faith to protect the corporate interest, and does not act out of self interest. *Meyer*, 807 S.W.2d at 159. Management Company alleges that Tuohy, as an individual and as principal of TMS, acted for personal gain, or out of self interest, in inducing the termination of the service contract by the Insurance Company. If true, this would remove the privilege of inducing the breach of the service contract from Tuohy, thereby relieving Tuohy, as an individual and as principal of TMS, of any justification for his actions. Management Company's petition satisfies the "absence of justification" element of a tortious interference with a contract claim against Tuohy and TMS.

Finally, Management Company pleads that as a result of the actions of Tuohy and TMS, Insurance Company wrongfully terminated the service contract, causing damages to Management Company in the form of loss in value of the company and lost income, including management fees and expenses. This allegation is sufficient to satisfy the damage element of Management Company's tortious interference claims.

Management Company's petition satisfies all the elements required to plead a claim for tortious interference with a contract against Tuohy and TMS. The trial court erred in dismissing these claims and its decision in this regard is reversed.

### C. *Negligence*

For its claim of negligence against Tuohy, Management Company additionally alleges that Tuohy owed Management Company a duty to provide management and executive services on its behalf to Insurance Company under the service contract. If Management Company did not provide any management services to Insurance Company from January 1992 through October 1993, as claimed by Insurance Company and denied by Management Company, then such failure to provide services illustrates that Tuohy breached his duty to provide management and executive services to Insurance Company as delegated to him by Management Company. Further, it is pled that Tuohy's breach of his duty to provide management and executive services, if none were provided as alleged by Insurance Company, was the sole, actual, and proximate cause of Management Company's failure to provide such services. Finally, Management Company avers that if the service contract was validly terminated as a result of the failure to provide management services as alleged by Insurance Company, Tuohy's breach of his duty to provide services on behalf of Management Company has damaged Management Company.

■■ Management Company seeks to assert a claim in tort stemming from Tuohy's alleged breach of a duty arising from an oral contract. Missouri law recognizes that a tort may be committed in the nonobservance of contract duties and that a negligent failure to perform a contractual undertaking may result in tort liability. *Howell v. Welders Prods. & Servs., Inc.*, 627 S.W.2d 311, 313 (Mo.App.1981). An obligation may be assumed by contract, out of which may arise a duty to one other than a party to the contract. *Id.* Where a defendant undertakes to perform a contract, he must exercise reasonable care for the safety of others and perform his duty skillfully, carefully, diligently and in a workmanlike manner. *Id.*

In *Howell*, this court was asked to overturn a directed verdict entered against Howell on a claim that the defendant owed him a tort duty arising out of an oral contract to deliver cylinders filled with liquid nitrogen. In affirming the judgment of the trial court, the *Howell* court concluded that the precedent for tort claims committed in the nonobservance of a contract duty involved duties arising from written contracts and declined to extend the theory of liability to include the "ephemeral, indefinite and implied type of oral contract duties" alleged by Howell. 627 S.W.2d at 313–14. The court went on to state, however, that had there been sufficient evidence of an oral contract which adequately detailed the duties and responsibilities of the parties, the result it reached may have been different. *Id.* Consequently, Management Company's claim based on the oral contract is viable under Missouri law if the alleged

oral contract is sufficiently detailed with respect to the duties and responsibilities of the parties. We will not evaluate the sufficiency of detail in the present alleged oral contract; instead, we assume, for purpose of considering the propriety of the dismissal of Management Company's claim in tort for breach of duty arising from Tuohy's oral contract, that the oral contract was sufficiently detailed for further analysis.

Having reviewed Missouri case law on the subject of tort liability arising out of nonobservance of contract duties, it is readily apparent that most cases involve third parties asserting claims against one of the parties to the contract. See, e.g., *Howell, supra*; *Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum*, 392 F.2d 472 (8th Cir.1968); *Wolfmeyer v. Otis Elevator Co.*, 262 S.W.2d 18 (Mo. 1953); *Lowery v. Kansas City*, 337 Mo. 47, 85 S.W.2d 104 (1935). The instant case involves one party to an alleged oral contract asserting a negligence claim against the other party based on a duty arising from the contract. Under these circumstances, we find the decision in *Harzfeld's, Inc. v. Otis Elevator Co.*, 114 F.Supp. 480 (W.D.Mo. 1953), instructional.

In *Harzfeld's*, plaintiff operated a retail store and contracted with defendant whereby the defendant agreed to regularly inspect and service the elevator's located in plaintiff's building. A second contract was entered into by the parties whereby defendant agreed to remove and replace a defective cable that was suspending one of the elevators. Plaintiff claimed that defendant negligently and recklessly installed the new cable, causing the elevator to eventually fall, injuring the passengers inside. As a result of the accident, plaintiff claimed its business was damaged and it suffered a loss of profits because the customers became afraid to ride the elevator.

▮ The *Harzfeld's* court aptly summarized the question of law it addressed: "[U]nder what attending circumstances will a breach of a private contract give rise to an *ex delicto* cause of action in favor of a party to a contract." 114 F.Supp. at 483. The court noted that it is important to consider the distinction between negligence and non-performance of a contract obligation in deciding whether a cause of action in tort arises from the breach of a private contract duty. *Id.* at 484. In explaining the significance of this distinction, the court stated:

> Here, we are concerned with contract provisions which stand by themselves and place the parties in such a relation that a duty to perform carries with it an obligation to exercise due care in its performance. In such a case, negligence is the *sine qua non* to liability; for if it be a fact that a breach of contractual obligation is occasioned by negligent misfeasance or nonfeasance, i.e., failure to exercise due care in the performance of contract undertakings, *as distinguished from mere failure to complete such undertakings,* then a party to such a contract injured as a result thereof, has the right to elect, to sue in tort or in contract for his damages.

*Id.* Based on this language, it can be said that a mere failure to complete the undertaking required by contract would not give rise to a cause of action in tort; the remedy for such failure to act would lie in contract. The courts in Missouri have never recognized a mere breach of contract as providing a basis for tort liability. *Khulusi v. Southwestern Bell Yellow Pages*, 916 S.W.2d 227, 229 (Mo. App.1995).

▮ The fact scenario averred by Management Company erroneously equates the alleged failure to provide management services by Tuohy to an act of negligence. The undertaking required by the purported oral contract between Tuohy and Management Company was the provision of management and executive services to Insurance Company. The alleged failure of Tuohy to carry out the undertaking of the purported oral contract between Tuohy and Management Company would give rise to an action in contract, not in tort. Consequently, Management Company has failed to plead an actionable negligence claim against Tuohy. The trial court did not err in dismissing the negligence claim against Tuohy.

In its brief, Management Company also argues that it asserted a claim of negligence

against TMS. While we see no reason to differ our holding on the issue of the alleged negligence claim against TMS from that against Tuohy based on the above rationale, we need not reach that level of analysis. Count V of Management Company's petition alleging negligence makes no allegations whatsoever as to TMS. There is absolutely no basis for a claim of negligence against TMS pled by Management Company. The trial court did not err in dismissing any purported claims of negligence against TMS.

### D. *Civil Conspiracy*

 Management Company claims that Tuohy and TMS breached their fiduciary duties to it, and induced, or in concert with Mills caused to be induced, the board of directors of Insurance Company to unilaterally terminate its business relationship with Management Company. A civil conspiracy is proved by evidence that two or more persons have an agreement or understanding to do an unlawful act, and that, in pursuance of this agreement or understanding, they proceed to carry out their unlawful purpose to the damage of the plaintiff. *Property Tax Representatives, Inc. v. Chatam,* 891 S.W.2d 153, 159 (Mo.App.1995). The conspiracy itself is not actionable; the unlawful act done in pursuance thereof is actionable, and the conspiracy has to do only with the joint and several liability of the co-conspirators. *Id.* at 159–60; *Blaine v. J.E. Jones Constr. Co.,* 841 S.W.2d 703 (Mo.App.1992).

The court in *Chmieleski v. City Prods. Corp.,* 660 S.W.2d 275 (Mo.App.1983), explained what is required of a claim of civil conspiracy in order for it to be actionable:

To establish a claim for civil conspiracy, the proof must be "such as to warrant a jury in finding that the conspirators had a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement. *American Tobacco Co. v. United States,* 328 U.S. 781, 810, 66 S.Ct. 1125, 1139, 90 L.Ed. 1575 (1946). There must be clear and convincing proof that the alleged conspirator "knowingly performed any act or took any action to further or carry out the unlawful purposes of the conspiracy." *Contour Chair Lounge*

Co. v. Aljean Furniture Mfg. Co., 403 S.W.2d 922, 930 (Mo.App.1966). In addition and by its nature, a conspiracy has as its object or purpose the obtaining of a benefit for the conspirator. *Rosen v. Alside, Inc.,* 248 S.W.2d 638, 643 (Mo.1952).

*Chmieleski,* 660 S.W.2d at 290. It is under these standards that we review Management Company's pleadings to determine if a cause of action in civil conspiracy was pled.

Management Company's petition appears to attempt to allege conspiracy claims against Tuohy and Mills and against TMS and Mills, stating that "there developed a meeting of the minds between Tuohy, either directly or through TMS, and Mills to wrongfully terminate the service contract between Management Company and Insurance Company in order that Tuohy, TMS and Mills could dramatically increase the likelihood of personal financial gain by assuming a larger management role created by the absence of the Management Company and by capturing all or a portion of the prior management fees which had been paid to Management Company...."

Having determined that Management Company did not sufficiently plead a breach of fiduciary duty claim against TMS, the addition of the allegations that the acts constituting the alleged breach by TMS were the result of a conspiracy cannot breath life into the cause of action against TMS which was not sufficiently pled. *See Bockover v. Stemmerman,* 708 S.W.2d 179, 182 (Mo.App.1986). Because Management Company did not sufficiently plead the underlying wrongful act as to TMS, the trial court did not err in dismissing the civil conspiracy claim directed against TMS and Mills.

 Having found that Management Company did sufficiently plead a cause of action for breach of fiduciary duty against Tuohy, we must evaluate whether Management Company made allegations sufficient to establish Tuohy and Mills had an agreement to perform the alleged unlawful act of Tuohy's breach of fiduciary duty and performed acts in furtherance of the agreement. Management Company averred that a meeting of the minds between Tuohy and Mills in fur-

therance of the conspiracy occurred at the October meeting of Insurance Company's board of directors when Tuohy, while an agent and fiduciary of Management Company, negotiated an undisclosed employment arrangement directly with Insurance Company through Mills to the detriment of Management Company and in contravention to his fiduciary duty to Management Company. Management Company also specifically alleged that Tuohy and Mills thereafter engaged in a systematic and improper effort to frustrate Management Company's ability to perform management services for Insurance Company and schemed to cause Insurance Company to terminate its business relationship with Management Company. After reviewing the whole petition and assuming all of Management Company's averments to be true, we believe a claim of civil conspiracy against Tuohy and Mills was sufficiently pled. The trial court erred in dismissing the civil conspiracy claim against Tuohy and Mills.

### III. CONCLUSION

We affirm the decision of the trial court in part and reverse it in part. We find that the trial court did not err in dismissing the breach of fiduciary duty claim against TMS, the negligence claims against Tuohy and TMS, and the civil conspiracy claim against TMS and Mills, and affirm these portions of the trial court's decision. We reverse the portion of the trial court's order dismissing the breach of fiduciary claim against Tuohy, the tortious interference with a contract claims against Tuohy and TMS, and the civil conspiracy claim against Tuohy and Mills, finding that these claims were sufficiently pled by Management Company. This cause is remanded for further proceedings consistent with this opinion.

All concur.